# Kelly *v.* The State.

*Indictment for Murder.*

1. *Change of venue; discretionary with primary court.* — An application for a change of venue is addressed to the sound discretion of the primary court, and its exercise in granting or refusing the change is not subject to revision.   (Overruling *Ex parte Chase*, 43 Ala. 303, and the cases following it.)

2. *Dying declarations; verbal evidence of; when not inadmissible.* — A person who has heard dying declarations may be examined verbally as to them, although a magistrate present took down and reduced to writing declarations made to him, at the same time, which were read over to and approved by the deceased, and were then in the custody of the court.

3. *Same; objection to, when properly overruled.* — An objection to the whole of declarations which are admissible as dying declarations, without pointing out the obnoxious portions or stating the grounds of objection, is properly overruled.


APPEAL from Circuit Court of Dallas.

Tried before Hon GEORGE H. CRAIG.

The appellant, Eugene Archie Kelly, was convicted of the murder of Henry Cunningham, and sentenced to be hanged.

When arraigned he pleaded not guilty, and by consent the 23d day of December, 1875, was set for the trial.   On that day he filed a sworn application for a change of venue.   The petition alleged that injurious reports of the manner in which the

[Kelly *v.* State.]

killing occurred had been circulated throughout the county; that, as detailed in the rumors current, the offence had aroused great indignation and feeling in the minds of the community; that the time had been so short since then that the prejudice thus excited had not yet abated; that certain persons, who were named, said defendant ought to be hung; that deceased had many relatives in the county who had inflamed the community against him to such an extent that at one time many persons advocated the summary seizure and execution of defendant. No evidence was offered for or against the petition, and the court after argument refused to grant a change of venue. The parties proceeded to empanel a jury, but before it had been completed eighteen of the persons summoned had stated, on examination as to their qualifications, that "they had a fixed opinion as to the guilt or innocence of defendant which would bias their verdict," and thereupon defendant renewed his application for a change of venue, incorporating in the old petition a statement of what had occurred in the selection of the jury, but the court again overruled the petition, and the defendant again duly excepted.

On the trial Dr. Clarke was introduced as a witness for the prosecution, and testified that he was a practising physician and had examined deceased's wounds, and after doing so had informed deceased that it was necessarily mortal and that he would soon die, to which deceased replied, "Well, I can't help it." After this witness had described the wound and deceased's condition at the time the witness saw him, he was asked if deceased, after he was informed of his condition, made any statement as to who wounded him, and if so, what was said.

The prisoner objected, "on the ground that what was said then and there was taken down in writing, and the writing was the higher evidence. It was then shown to the court that Sumter Lea, Esq., who was then in court, had taken down, at the time and place mentioned by the witness Clarke, what purports to be the dying declarations, and that the solicitor had the writing, which was then exhibited to the court." It was shown that at the time when the deceased made the declarations, after having been informed of his condition, "he was suffering much, and was wellnigh exhausted from loss of blood." The witness Lea testified that he heard all that deceased said, but did not take it down then, but after Clarke left he put questions to the deceased and took down his answers in writing; the witness Clarke, however, testified that according to his recollection he was present when Lea took down the answers. "Upon this evidence the court overruled the objection, and permitted the witness Clarke to testify as

[Kelly v. State.]

to the declarations deceased made to him, and defendant duly excepted.". The dying declarations proved by Clarke were in substantial accord with the written statement taken down by Lea. It is unnecessary to refer further to the testimony as to the condition of the deceased, except to say that it clearly showed that he made the declarations under a sense of impending dissolution. After Clarke had finished testifying, the State introduced said Lea, who proved the genuineness of the writing, the circumstances under which the declaration was made, and the further fact that after he had taken deceased's declaration he read it over to him, and, after making some corrections suggested by deceased, it was again read over to him and he approved it. The State then offered to read the written statement in evidence to the jury as dying declarations. The defendant objected on the ground that the State had already been allowed to prove a verbal declaration made at the same time and place, but the objection was overruled, and the writing read in evidence against the objection and exception of defendant. The substance of the dying declaration was that defendant, seeing Cunningham receive the proceeds of a sale of cotton, "tolled him off the road," on the pretense that he wished to sell him a mule, and when Cunningham had gotten a little ahead, shot him in the back with a double-barrel gun and then robbed him. The wounded man remained where he fell from some time in the morning until about dark, when some wood-cutters, attracted by his cries, removed him. There was other evidence in the case, but none other which is material to the exceptions reserved.

JASPER N. HANEY, for appellant. — The change of venue should have been granted. *Ex parte Chase*, 43 Ala. 305; *Murphy & Ashford* v. *State*, 45 Ala.

JOHN W. A. SANFORD. Attorney General, *contra*. — I. The first application was too vague and indefinite. Mere belief of prejudice will not authorize the change of venue. The facts and circumstances should be stated. 7 Hill, 147 ; 10 Grattan, 658 ; 7 Cowen, 137 ; 4 Harrington, 582. The last application was made for delay, and was too late. 29 Ala. 34.

II. A change of venue rests in judicial discretion. 7 Ind. 160 ; 31 Miss. 490 ; 28 Ala. 28. This discretion is not revisable. 14 Ind. 39 ; 10 Ala. 814 ; 8 Blackford, 576. The case of *Ex parte Chase* ought to be overruled; it conflicts with reason and the current of authority, and is contrary to the long established practice in this State. The testimony of Clarke was proper. It could not have injured appellant, even if held to be illegal. It shows a corroboration between the

written and verbal declarations. The objections to his testimony do not distinguish between the legal and illegal portions and was properly overruled.

MANNING, J. — The defendant in this cause in the circuit court made application upon affidavit, for a change of *venue* from Dallas to some other county, and set out that there were the same reasons why he could not have a fair trial in Perry county.

The judge of the circuit court refused to change the *venue ;* and the question is, whether this court will disturb his decision. We should have no hesitation on this subject but for the case *Ex parte Chase* (43 Ala. 303), in which our immediate predecessors, Chief Justice PECK, dissenting, held that the ruling of the court below, denying such an application, was subject to revision and reversal in the supreme court ; which decision led to a like determination by them in some other cases.

The law authorizing, upon the application of a defendant in a criminal cause, the transfer of it to another county for trial, is as old as the State itself. But it never was held that the decision of the primary court thereupon was subject to the control of this court. In the *State* v. *Brookshire* (2 Ala. 303), the court of that day unanimously held, in the language of ORMOND, J., that, " The whole matter must of necessity rest in the discretion of the court [below], to be exercised under a view of all the circumstances, and cannot be reconsidered in this court."

This seemed so satisfactory to the legal profession in the State, that the same question was never again, until after the adoption of the Code of 1852, brought into discussion in the supreme court. A similar point was made, however, in *The State* v. *Ware*, 10 Ala. 814. The person then under indictment having made application for a change of *venue* from Talladega county, and alleged in his affidavit that the same reasons, upon which that motion was founded, held good in reference to the counties of Benton, Coosa, St. Clair, and Shelby ; and the circuit court having ordered the cause to be transferred from Talladega to Benton county, his counsel insisted here, that " after allowing the change of *venue* the court had no discretion as to the county " to which the cause should be sent, for " that such county must be free from the like exception."

But this court, by HENRY GOLDTHWAITE, J., responded : " The whole subject of a change of *venue* is within the discretion of the circuit court, and the exercise of that discretion is not revisable. . . . . If the construction of the statute was otherwise, the effect would be to allow the prisoner to select

the county of trial, after a change of *venue,* whenever his conscience is sufficiently pliant to assert that such counties were subject to the exceptions assigned against that where the indictment is found," &c.

It will be seen that these judges seemed to think there was a manifest propriety, if not a necessity, in allowing the courts in which prisoners were tried to decide finally — not the vital question of the guilt or innocence of the accused, but whether there was any good reason why his trial should not be had in the county assigned for it by the Constitution and law of the land. And this, because such authority ought, according to Judge ORMOND, " to be exercised under a view of all the circumstances ; " and because it was absurd, as intimated by Judge GOLDTHWAITE, to allow a prisoner of a pliant conscience to select or dictate in what county he should be tried.

Against these views, not a word of dissent was uttered in either the courts or the legislature. And the law on this subject remained unaltered from the origin of the State to the year 1853. When the first Code, which contained the same sections that are carried into the Revised Code upon this matter, went into effect, was any change thereby made ?

The commissioners who prepared that Code were Judge Ormond, (the same who delivered the opinion above quoted from), Judge George Goldthwaite (brother of him who pronounced the other opinion referred to and then himself on the bench of this court), and the late Governor Bagby. And it does not appear probable that such a commission intended to take this important power from a magistrate in whose hands, according to the language of one of them, it " must of necessity rest."

` What these commissioners did was, mainly, to codify the statute laws of Alabama. To do this and bring them into proper order, in the concise style requisite, it was necessary to alter very generally the forms of expression in which those laws were prescribed ; and this was really the reason or cause of most of the changes in this respect that were made by them. We ought not to impute either to them or to the legislature which adopted what they did an intention to change the laws themselves as expounded by the courts, unless such intention is clear from the language employed. And since they well knew that, according to the adjudications of this court, the decision of a circuit judge upon an application for a change of *venue* was not revisable here, and since, also, it would have been very easy, if it was their purpose to change the law in this respect, to do so in plain terms, we may be certain, if such was their intention, that it would have been expressed in language that would leave nothing to construction or in doubt.

Whether such alteration was effected by the Code, was the question brought before this court in 1856, in *Ex parte Banks* (28 Ala. 28) ; a case which, on account of peculiar circumstances, excited much interest and enlisted eminent professional ability on behalf of the applicant, who had the sympathy of all the judges on his side.  After an able discussion of the subject at the bar, and in the opinions of the judges, it was decided (RICE, C. J., dissenting), that the language of the Code, though differing from, was only the equivalent of what was expressed in the former acts, and that no such change was made. WALKER, J., in closing his opinion, said : " The decisions of the courts of our sister States, in reference to the change of *venue*, are generally based upon statutes.  For that reason they are not referred to as authorities in this opinion ; but none of them are in conflict with the conclusion obtained."

The decision in *Ex parte Banks*, made in 1856, was acquiesced in as correct by the profession and the legislature, without any attempt to change it, for a space of thirteen years. Then in 1869 the same question, whether the decision of the circuit court upon a motion to change the *venue* in a cause was revisable in an appellate court, was presented again in *Ex parte Chase* (43 Ala. 303), and was decided, as heretofore mentioned, in the affirmative, by Judges PETERS and SAFFOLD, and the decision in *Ex parte Banks* declared to be overruled, PECK, C. J., dissenting.  PETERS, J., who delivered the opinion of the majority of the court, suffered himself to be carried off into a discussion of the question whether a defendant in a criminal cause is entitled to a fair trial by an impartial jury, which nobody ever disputed ; whereas the true question was, what is the proper legal method of obtaining such a trial ?  And in the course of his remarks, he does not directly comment at all on the prior decisions of this court ; although it seems from the tenor of his opinion, that he considered them to be in palpable violation of the Constitution.

The right guaranteed by the Constitution to a person under indictment, — a right of inestimable value to one who is innocent (and it is for the benefit and protection of such that all like provisions are made), — is that he shall have " A speedy public trial by an impartial jury of *the county or district in which the crime was committed.*"  This does not secure to the accused as a *constitutional right*, a trial by jury in any other county or district.  Indeed, where there is no special prejudice against him, that county or district in which the crime was committed, and a speedy public trial in it, are ordinarily the best means of securing the acquittal of one who is falsely accused.  For there, generally, are the witnesses and evidence needed at the trial, and a local knowledge of facts and circum-

[Kelly v. State.]

stances, which, as truth is necessarily harmonious with all facts, directly or indirectly aid to vindicate the innocent.

The proper usual methods of procuring an impartial jury are by having men of intelligence and integrity summoned to compose it, and challenges for cause, and a reasonable number of peremptory challenges allowed to the accused, to prevent unfriendly persons from being put upon it; in which particulars the law has made liberal provisions for his protection against unjust accusations.

If these be not sufficient, and on account of local animosities, or other causes, a fair trial cannot be had in the county in which the crime was committed, the cause should be transferred to and tried in some other county, free from the like exception. Whether a change of *venue* is necessary to obtain a fair trial by an impartial jury is not a question of law, but of fact. And a circuit judge on the spot, in " view of all the circumstances," and having knowledge of persons, facts, and influences, is much better qualified than the supreme court at a distance, with only ingeniously written *ex parte* affidavits before it, to determine the fact whether or not it is true, that the defendant cannot have a fair trial by an impartial jury in the county in which he is indicted.   As a jury is by law held to be better qualified than even the supreme court, to ascertain what facts are established by the evidence in a cause, so a circuit judge, in " view of all the circumstances," must be better qualified than it, to determine a matter of fact of the sort under consideration; and we think it does not often happen that an official occupying that honorable position has so little humanity as to insist on the trial in his court, for a high crime, of one that he believes cannot there have justice done to him.

It surely cannot be regarded by a lawyer as an extraordinary thing, that a circuit judge should have authority to decide definitively a merely preliminary matter, like a motion for a change of *venue*.   Not only has such authority been always exercised in our midst, by the judges of the inferior courts of the United States, but no appeal is allowed in criminal cases from any rulings made or sentences pronounced therein, by such judges.   Yet no court has ever considered this a denial of a constitutional or " fundamental right."

It is well known, that many times the chief object of a motion to change *venue* is to have the trial transferred to a place distant from that in which the witnesses for the prosecution reside, for the distinct purpose of being rid of their evidence. The State does not advance to witnesses in its behalf the expenses of their attendance to testify.   They are often poor and unable to go to a distance for that purpose; and the consequence frequently is, that they do not go to the place of trial,

[Sellers v. State.]

and the criminal, therefore, escapes unpunished.   A judge who should see that this was the object of an application for a change of *venue* would fail in his duty to the public if he aided in making the scheme successful, as he would also fail in his duty to the same public, if, on the other hand, he did not see to it that no innocent person should in his court be sacrificed to the malevolence either of individuals or of a community.

It is with much regret that we find ourselves compelled to make a decision that effects a change in the recent practice of the courts on this subject.   But no rights of property are involved in the matter, and the subversion of the long established and correct rule, and substitution of a contrary one, so tends to the obstruction of the course of justice, and causes such delays in the proper administration of the laws, as to impose upon us the duty to reëstablish that correct rule, and to hold that the decision of the circuit courts on applications for change of *venue* are not revisable in this court.

The communications of deceased were dying declarations, and as such admissible in evidence against the prisoner.   The objections to them were to the admission of all he said.   If any portion of the communications was objectionable for a particular reason, the objection to it should have been specifically made, and not the whole of them excluded.

There was no error in admitting both the written statement taken down by one witness, and the declarations made in the hearing of another.   This is not a case, like that of contract, in which oral evidence is inadmissible because there was a writing, setting forth the agreement of the parties.   The proof was only cumulative, or that of different witnesses as to the dying declarations of the deceased, to which there can be assigned no valid legal objection.

Judgment of the court below is affirmed.

