# Evans *v.* State.

## *Indictment for Murder.*

1. *Change of venue; ruling of lower court on, not revisable.*—The decision of the primary court refusing a change of venue, is not revisable.

2. *Copy of indictment served on prisoner; when objection to correctness of comes too late.*—After pleading to a valid indictment, taking part in empanneling of a jury to try the issues, and entering upon the examination of witnesses, it is too late to raise the objection that the copy of the indictment served on the prisoner is incorrect, unless it be made manifest that thereby the defendant has been put to a disadvantage, which would probably lead to an unjust verdict against him.

3. *Evidence; what admissible.*—Conversation or remarks of the prisoner "a short while before the killing, while in company with the deceased and others," is admissible in behalf of the State, if relevant to the issue; and its admission, if not relevant, is not ground of error, if the testimony was favorable to the defendant.

4. *Same.*—A remark of the defendant to a witness, on seeing the deceased ride up to a church, two or three years before the killing, "there is a man I cannot get along with," though of little weight of itself, is relevant and admissible testimony, and is properly admitted, when the only objection urged is that it is not legal or lawful evidence.

5. *Charge; what not erroneous.*—The day of the homicide the defendant borrowed a "Rodgers knife," having a single blade four inches long, from a neighbor, saying "I may need it," and then went to a town, on his return from which that night the homicide was committed. After three other persons had started on horse-back the defendant overtook them, and furnished a bottle of whisky, out of which three out of the four, defendant among them, drank until they became intoxicated. After this, defendant commenced abusing a brother of deceased, whereupon deceased said he would defend his brother. Defendant and deceased then got down and fought a short time in the dark. Deceased received five cuts from a knife, and died almost immediately. Defendant was bruised and had his ankle sprained. The court, after giving a general charge, and after charging the law as to persons voluntarily engaging in sudden fight, and one killing the other without any pre-existing malice, and that it would be manslaughter in the first or second degree, as the killing was intentional or unintentional, said further : "And to enable you to determine the intent, you may look to the proof in regard to the weapon, and the manner and extent of its use. One is presumed to intend what he really does do, with the use of those means which ordinarily and naturally accomplish the result. Thus, if one in such a fight should use a knife, capable of inflicting a mortal wound, and with it wound his antagonist four or five times, so that he

died from it almost immediately, the intention to kill might be inferred from the use of such a weapon. If, however, death resulted from fist or foot, or severe fall, the inference of the intent to kill might well be different." *Held:* The charge was not obnoxious to the objection that it singled out particular facts, and gave them too much emphasis ; nor was it otherwise erroneous or unfair.

6.   *Charge; what erroneous.*—It is not error to refuse a charge in a criminal case, "if any individual juror is fully convinced from the evidence, beyond a reasonable doubt, that the defendant is guilty of any particular degree of homicide, and he becomes fully satisfied that his fellows will not agree with him, he might from considerations of public good, and in order to agree with his fellow jurors, find the defendant guilty of a lower degree of homicide, or even find him not guilty ; but it would be rank injustice to the defendant, and a failure to perform the high duty devolved on him as a juror, if he should, against his own conviction from the evidence, in order to agree with his fellows, find for a higher offense than he would otherwise have done, or find the defendant guilty, when he otherwise would have found him not guilty."

7.   *Indictment of person under alias ; what sufficient proof to sustain.*—Where the defendant is indicted in his own name, and also under an *alias*, it is not necessary to show that he was known and called by both names ; it is sufficient, if he is identified as the person known by or entitled either of such names.

APPEAL from Jackson Circuit Court.

Tried before Hon. LOUIS WYETH.

The appellant was indicted, under the name of Henry Evans *alias* Henry Rounsiville, for the murder of one Foster. The indictment contained two counts, the first of which charged that appellant unlawfully and with malice aforethought, killed Mack Foster, by cutting him with a knife; and the second count is identical with the first, with the exception of the name of the party killed, which is averred to be Mack Foster *alias* Anthony McKendry Foster.   The appellant moved for a change of venue, which the court refused, and he excepted.   After the appellant had pleaded to the indictment, and a jury had been empanneled, and the witnesses for the State and defense had been examined, the appellant announced to the court that the copy of the indictment served on him was incorrect.   By an examination of the copy served on him, which was produced and proved, it appeared that the first count of the indictment had been omitted, but the second count was correctly copied and served on the prisoner.   The court ruled that this was a substantial compliance with the law, and the defendant excepted.

One Pace, a witness for the State, testified " that he (witness) had met deceased and others at Evans' own house, a short while before the killing ; that he remained at Evans' house until ten o'clock at night ; that he heard no threats ; that in a conversation about their ages, witness stated that he was forty years old, when Evans remarked that none of us would live to see forty years more, for the reason that it

[Evans v. The State ]

was over the average life, and that they were all talking friendly along." To the admission of this evidence, the defendant objected, "because the same was illegal and unlawful." The court overruled the objection, and admitted the evidence, and the defendant excepted.

One Freeman, a witness for the State, testified "that he saw Evans at church in 1873. When Foster and his wife came up, Evans said, there is a man I cannot get along with. It was shown that Foster was killed in 1877." The defendant objected to this testimony "as legal or lawful evidence in this cause." The court overruled the objection, and the defendant excepted.

It was shown by the State, that on the morning of the day of the homicide, the appellant had borrowed of one Bird, who resided on the same farm with him, a "Joseph Rodgers knife, having a single blade four inches long, saying to the witness at the time, "I wish you would lend me your knife to-day, I may need it." It was shown that appellant was then on horse-back, and about to start to the town of Scottsboro. On the evening of the same day, the appellant overtook the deceased in company with two others. Upon overtaking this party, appellant stated "that he had made a horse swap, in which he had got seven dollars to boot." One of the party then said to him, "if he had made that much he should treat the crowd," whereupon appellant replied that "if any one would go back after it, he would." One of the party then went back and procured a half-pint bottle of whiskey, and all of the party, except the person who had gone back, then drank, and started on home—the two others in advance and appellant and deceased in the rear. After they had ridden in this manner for about two miles, those in front stopped for the appellant and deceased to come up, and when they rode up appellant remarked, "I have just been telling Mack what a damned rascal Jack Foster is, whereupon one of the others said to appellant that he ought not to talk so." Deceased then said to appellant, "Jack Foster is my brother, and you sha'nt talk that way about him, I will defend or protect him." When this was said, both dismounted from their horses and fought a short time in the dark. Foster died a short time after they separated, from the effect of five cuts received by him. Appellant had his eye hurt, and his ankle sprained. The knife used could not be found. It was shown that at the time of the killing, the deceased and appellant were under the influence of liquor. This was substantially all the evidence, and the court, among other things, charged the jury as follows: "When two persons engage voluntarily in a sudden fight and one kills the other without any pre-

existing malice, it will be manslaughter in the first degree if the killing was intentional, or in the second degree if the killing was unintentional; and to enable you to determine the intent you can look at the proof in regard to the weapon used, and the manner and extent of its use. One is presumed to intend to do what he really does do, with the use of those means which ordinarily and naturally accomplish the result. Thus, if one in such a fight should use a knife, capable of inflicting mortal wounds, and with it wound his antagonist four or five times so that he died from it almost immediately, the intention to kill might be inferred from such a use of such a weapon. If, however, death resulted from the fists, or foot, or severe fall, the inference of the intent to kill might well be different." To the giving of this charge, the defendant excepted. The court further charged the jury that, "where one has, or honestly believes he has, good reason to believe that he is in imminent danger of loss of life or of being maimed, as, for instance, losing an eye, or an ear, or a limb, or is in danger of other great bodily harm, he may, if he cannot otherwise avoid the danger, take the life of his assailant in self-defense, but this principle does not apply in a case where the defendant at the time of the killing had reason to believe himself in danger of battery not involving danger to life, limb, or of great bodily harm. Were the law otherwise every fight between citizens might result in the killing of one or the other according to law. When a defendant seeks to avail himself of this defense, the burden of proof is on him to show that he did believe that he was at the time in imminent danger of such injury." To the giving of this charge the defendant excepted.

The appellant then requested the following charge : 1. "If any individual juror is fully convinced, from the evidence, beyond a reasonable doubt, that the defendant is guilty of any particular degree of homicide, and he becomes fully satisfied that his fellows will not agree with him, he might, from considerations of public good, and in order to agree with his fellow jurors, find the defendant guilty of a lower degree of homicide, or even find him not guilty, but it would be rank injustice to the defendant and a failure to perform the high duty devolved on him as a juror, if he should, against his own convictions from the testimony, in order to agree with his fellows, find for a higher offense than he otherwise would have done, or find the defendant guilty when he otherwise would have found him not guilty." The court refused to give this charge and the appellant excepted. The defendant also requested the following charge : " That, when a person's name as a defendant is necessary to be men-

tioned in an indictment, and the person or defendant is mentioned with unnecessary particularity, all the circumstances of description must be proved as laid in the indictment, for they are all made essential to the identity. And if the jury find that the indictment charges or alleges the name of the defendant to be Henry Evans *alias* Henry Rounsiville, then the name of Henry Rounsiville is an unnecessary particular description and must be proved as laid in the indictment, and if the name has not been so proven, then they cannot convict the defendant on any charge contained in the indictment." This charge the court refused to give, and the defendant excepted. The jury found the defendant guilty of murder in the second degree, and assessed his punishment at imprisonment in the penitentiary for thirty-nine years. The defendant appeals to this court, and assigns the various ruling to which exception were reserved as error.

ROBINSON & BROWN, for appellant.

H. C. TOMPKINS, Attorney-General, *contra.*

No briefs came to Reporter's hands.

MANNING, J.—It is settled law in this court, that the decision of a Circuit Court refusing a change of venue in a criminal cause is not subject to revision here.—*Kelly v. The State,* 52 Ala. 361.

After pleading not guilty to an indictment for murder, which was in no respect insufficient, and taking part in empanneling a jury sworn to try him, and examination has been had of the witnesses, it is too late for a defendant to object that the copy of the indictment which had been delivered to him was incorrect; at least, unless it be made manifest that the defendant had thereby been put to a disadvantage which would probably lead to an unjust verdict against him. In this instance, this does not appear. The same evidence that would be required to convict the defendant upon the first count in the indictment which was left out of the copy that was served upon him, would be sufficient for his conviction of the same offense, in nature and degree, under the second count, of which a copy was duly delivered to him. Doubtless, if it should be made to appear that defendant had been taken by surprise, and failed to obtain important evidence on his behalf, or had otherwise been misled to his injury—by the service upon him of a copy materially

variant from the true indictment—it would avail him on a motion for a new trial in the Circuit Court.

The testimony of Pace was not so irrelevant as to be inadmissible on the part of the State. It was a narration of some remarks made by defendant in a company composed of himself and Foster (the deceased), and one or two others "a short while before the killing." But the State failed to elicit any expression therein of malevolence on the part of defendant towards Foster. The evidence was more in appellant's favor than against him, and could not have done him any injury on the trial.

Foster was killed in February, 1877. Between two and three years before, according to the testimony of Freeman, Foster and his wife having rode up to a church, near which witness and defendant were standing, the latter said to Foster : "There is a man I cannot get along with." This remark by itself was entitled to very little weight, in comparison with other evidence in the cause. But we cannot say that it was not "legal or lawful evidence ;" which was the reason assigned for objecting to it. It was relevant, and therefore admissible.

It was proved that on the morning of the day of the homicide, defendant borrowed a "Joseph Rodgers' knife," having a single blade about four inches long, from a neighbor, saying, "I may need it." He was then starting on horseback to town, on return from which, on the night of the same day, the homicide was committed. After the three other persons in the company had started he overtook them and furnished money with which a bottle of whisky was bought, of which three out of the four (himself, Foster and another) drank until some, if not all of them, were intoxicated. Defendant, after the drinking, rode along with Foster, whose brother Jack he soon began to abuse. This ended in Foster's saying Jack was his brother and he would defend him. Whereupon they both got down, Foster being unarmed, and fought a short time in the dark. Foster died almost immediately, having received five wounds made by a knife, which was not found. Defendant was bruised and his ankle sprained. We do not think that in explaining the inference—not of malice aforethought—but of an *intent to kill*, as arising from the nature of the weapon used by one person in slaying another, the circuit judge made his charge obnoxious to the criticism of singling out a part of the facts, and thereupon giving to them too much emphasis in his instruction to the jury. What he said on that subject was only a part of his charge. He explained to them at the same time the law of manslaughter, and of killing in self-defense, or of supposed self-

defense. And we do not perceive in his charge on these subjects, any unfairness or error.—See *Hadley v. The State*, 55 Ala. 31; *Commander v. The State* (in MS.); Murphy's case, 39 Ala. 142; Eiland's case, 52 Ala. 322; Clark's Manual, § 529.

The first charge asked on behalf of defendant, manifestly, was properly refused. Such an interpretation of the juror's oath as is therein assumed, would always arm those members of a jury who might be in favor of a verdict of acquittal, or of finding the defendant guilty of an inferior grade of the offense for which he was indicted, with authority to coerce the rest into a concurrence with themselves. The oath binds each juror, severally, a *true* verdict to render, according to the evidence, upon his own judgment and conscience, not those of his fellows.

The fact that defendant was designated in the indictment as "Henry Evans, *alias* Henry Rounsiville," did not make it necessary to prove that he was known and called by both of these names. It was sufficient if he was identified as the person entitled to either of them and known by it.

We find no error in the record, and the judgment must be affirmed.