### GEORGE COOPER *v.* STATE OF MISSISSIPPI.

CRIMINAL LAW.    *Homicide.    Dying declarations.*

> An instrument of writing purporting to be a dying declaration of the deceased is not admissible in evidence on the trial of a defendant indicted for murdering him, where the person who wrote the instrument omitted such parts of the statement as he deemed immaterial, and after completing it aroused declarant as well as he could from a stupor and read it to him, although declarant, when the statement was orally made, was conscious that he was about to die and capable of making an intelligent statement.

FROM the circuit court of Claiborne county.

HON. JOHN N. BUSH, Judge.

George Cooper, the appellant, was indicted for the murder of one Joseph Nesmith, was tried and convicted of manslaughter, and sentenced to the penitentiary for five years, from which conviction and sentence he appealed to the supreme court.

Appellant's chief assignment of error was the admission in evidence on the trial, of a written statement containing in part Nesmith's alleged dying declaration, made about five or six hours before his death, and written down by an attendant physician. Appellant's objection to the introduction of the writing was based on the grounds that it contained only such part of the dying man's statements as the physician at the time of writing considered material, and that the declaration in any form was incompetent because of the dying man's mental condition at the time it was made.

The attendant physician testified that at the time such statement was orally made Nesmith was conscious and rational, and capable of making intelligent statements, but desirous of talking about immaterial things; that the writing of the statement occupied about twenty minutes, and before it was concluded the declarant had become dazed and was in a stupor, and if left alone would have gone to sleep. The physician further testified that he wrote the statement, not at the request of declarant, but of other persons present, using his own language instead of the language of declarant, and writing down merely the substance of such parts of the dying man's statements as he, the physician, considered material; that when the writing was concluded it was necessary to shake declarant to arouse him from the sleep into which he had fallen, before the statement could be read to him; that he, the physician, could not say whether the declarant made his mark or whether some one else made it for him.

When the paper containing the statement was offered in evidence, the court ordered certain parts of it stricken out as incompetent, and allowed it to go to the jury in an expurgated form, over appellant's objection.

*J. McC. Martin,* for appellant.

The so-called dying declaration, offered in evidence in expurgated form by the prosecution, was incompetent. As first offered, it stated in substance that appellant fired upon Nesmith, the declarant, the shot striking declarant in the left breast; that declarant was unarmed. And, in addition, it stated that, "I had been told by Scott and others that Cooper had said to them he would kill me. In a few days I should have been gone, and out of Cooper's way. He did not give me time. I was murdered without cause; foully assassinated, with no possible chance to defend myself, or to be saved in flight. Done this 23d of May, 1903, at 7.40 p. m. Written from Joe Nesmith's dictation, he being fully conscious, by E. P. Jones and R. A.

Segrest, witnesses." These sentences, set off by quotation marks, were stricken out of the statement, and thus expurgated it was placed before the jury.

The physician, Dr. Jones, in seeking to write the dying declaration, wrote a paper not dictated by the dying man. He used his own language, not the words of Nesmith. He consulted with persons other than the dying man, and wrote at the suggestion of others than Nesmith. He could not testify whether Nesmith made his mark to the alleged dying declaration, or how the signature was affixed.

The condition of Nesmith was throughout that of a man not in his right mind. It was necessary to arouse him from sleep or stupor frequently while the declaration was being written and read. Moreover, the physician stated on the stand: "I put down the sense of what he said. I wrote what I thought would be material to his case." The statement was not written at Nesmith's request. And as presented to the jury, the declaration was a judicially emasculated paper, penciled in his own language by a physician, for a man who, when it was written, had been dying all day, was practically unconscious of his actions, and who admittedly never formally affixed his signature thereto.

The general rule is that evidence of such nature is only admissible, in any instance, where the death of deceased is the subject of the charge, and the circumstances of the death the subject of the dying declaration. Roscoe's Crim. Ev. (8th ed.), vol. 1, p. 57. In order to judge of the state of mind of the dying man the whole of the circumstances must be looked at. *Ibid.*, p. 57.

"The general principle on which this species of evidence is admissible is that they are declarations made in extremity, when the party is at the point of death, and every hope of this world is gone; when every motive for falsehood is silenced, and the mind is induced by the most powerful considerations to speak

the truth; a situation so solemn and so awful being considered by the law as creating an obligation equal to that imposed by a positive oath administered in a court of justice." 21 Cyc., 976; *Payne* v. *State,* 61 Miss., 161; *Westbrook* v. *People,* 126 Ill., 81. "A dying declaration must be complete, and go to the jury as a whole or not at all." 21 Cyc. of Law & Proc., 990.

"On the question of competency the general rules of competency of witnesses are applicable. But where for any reason, such as infamy, lack of mental capacity, or the like, the declarant would not have been permitted to testify, had he survived, his dying declaration is not admissible in evidence." *Lambeth* v. *State,* 23 Miss., 322; *State* v. *Williams,* 67 N. C., 12; *Walker* v. *State,* 39 Ark., 221; *Mitchell* v. *State,* 71 Ga., 128.

"The declaration must be approved by the declarant after reading it or hearing it read by another, and must be shown by a competent witness to be the identical statement so made and approved. A written declaration which was neither read by declarant nor read to him by another, and was not signed by him after it was written, cannot be received in evidence." *Freeman* v. *State,* 112 Ga., 48; *Perry* v. *State,* 102 Ga., 365; *Binns* v. *State,* 46 Ind., 311.

Unsworn statements can be received in evidence only when made in extremis. Declarant must be conscious of his condition. He must have abandoned all hope of recovery from the injury inflicted by the accused, and be under the firm conviction of inevitable death near at hand. 1 Greenleaf on Ev., 158; *Harper* v. *State,* 79 Miss., 575 (s.c., 31 South. Rep., 195); *Brown* v. *State,* 78 Miss., 637 (s.c., 29 South. Rep., 519); *Bell* v. *State,* 72 Miss., 507 (s.c., 17 South. Rep., 232).

The paper offered as a dying declaration, in the case at bar, carried with it none of the features to make it admissible. The declarant never by word or act showed that he was conscious of impending death. He was incompetent, because of his physical condition, to make a dying statement. He never called on any one to take down any statement, nor did he really make any

statement. The paper presented did not contain the words of the deceased. The statement was not shown to have been signed by the alleged declarant. The paper presented to the jury was not even an entire paper, but an emasculated paper, with part of the original contents eliminated in order to make it admissible, in the opinion of the court. The paper, even as presented, was not confined to the *res gestae,* but went to matters disconnected therewith.

*F. A. Polsley,* on the same side.

*R. V. Fletcher,* assistant attorney-general, for appellee.

The dying declaration was shown on the trial to have been made by declarant under the sense of impending death, after having been advised by his physician that he could not live; at a time when, while in the throes of death, declarant was still in possession of his mental faculties.

The only possible objection which might be urged against the declaration is as to its form. But it was written by the physician, Dr. Jones, read over to the declarant, approved and signed by him.

Although the physician did not in every instance record the exact words of the declarant, he was, however, careful to preserve the sense of the declaration. It is testified to by the physician that many of the sentences in the statement are written literally as they fell from the lips of the dying man.

That such form of declaration is competent, see 2 Wigmore on Evidence, 1445, B, and authorities there cited.

The case of *Harper* v. *State,* 79 Miss., 575 (s.c., 31 South. Rep., 195), does not militate against this contention, for in that case the alleged declaration was written not under sense of impending death, but at a time when the declarant had expressed hope of recovery. It was held in such case that declarant's subsequent ratification and adoption of the written statement was not shown to have been fully understood by him,

there being doubt as to the condition of declarant's mind when such ratification occurred.

It was held, in the *Lipscomb case,* 76 Miss., 225 (s.c., 25. South. Rep., 158), that the court was not required to believe beyond a reasonable doubt that the facts exist which render the declaration competent, but must judge of the testimony according to its weight.

WHITFIELD, C. J., delivered the opinion of the court.

After the most careful and repeated consideration of the point, we are constrained to hold that the dying declaration in this case ought not to have been admitted in evidence.

*Reversed and remanded.*