163 So. 663

**WILLIAMS v. STATE.**

8 Div. 151.

Court of Appeals of Alabama.
June 28, 1935.

Rehearing Denied Aug. 27, 1935.

W. L. Almon, of Florence, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws and Wm. H. Loeb, Asst. Attys. Gen., for the State.

**SAMFORD, Judge.**

The defendant was charged and convicted of killing Taylor Fulks. The parties were neighbors owning adjoining land, and the difficulty resulting in the homicide grew out of a dispute over the land line between the two farms.

There was evidence tending to prove that the first act of aggression was on the part of defendant, and those with him, throwing rocks at the deceased. At this point the solicitor asked the witness, a son of deceased, who was then testifying: "At the time the rocks were first thrown your father was in his own field?" This question called for legal evidence as tending to prove and locate where the difficulty took place.

The second exception relates to a conversation between the dead man and his wife at a time and place not in any way connected with the homicide, and called for hearsay evidence. Davis v. State, 92 Ala. 20, 9 So. 616.

The defendant offered to prove by the witness Perkins a survey made by him of the line between the lands of defendant and deceased, which survey would have placed the line at such point as to have shown that deceased was on the land of defendant at the beginning of the difficulty. This evidence was properly excluded. The issues in this case do not include the location of the line between the lands of the parties, and we cannot allow the issues involved in this prosecution to degenerate into the settlement of a land line. Even if deceased had been on the land of defendant at the time of the difficulty, the defendant had no right to kill him in order to eject him. Such evidence as is here sought to be introduced would have involved the title to the strips of land over which was the dispute and would in effect have been submitting to the jury a collateral issue which probably would have distracted the mind of the jury from the real issues, and might have led the jury to believe that a landowner had the right, in ejecting a trespasser, to shoot and kill him. Coats v. Commonwealth, 191 Ky. 521, 230 S. W. 947; Utterback v. Commonwealth, 105 Ky. 723, 49 S. W. 479, 88 Am. St. Rep. 328; Gay v. State, 58 Tex. Cr. R. 472, 125 S. W. 896.

We have not been cited to, nor do we know of, any law to support the proposition that the fact that one happens to be on his own land at the time of a difficulty thereby secures to himself all the rights deducible from the principle which is illustrated by the maxim that every man's house is his castle and that he has a right to stand at its portals and defend himself against any and all attacks. Nor does the fact that a man is on his own land relieve him of the duty to retreat and flee, if he can do so without increasing his own peril, rather than to take the life of an adversary. Carter v. State, 82 Ala. 13, 2 So. 766; Lee v. State, 92 Ala. 15, 9 So. 407, 25 Am. St. Rep. 17; Vickers v. State, 18 Ala. App. 282, 91 So. 502.

The difficulty resulting in this homicide grew out of a controversy over a land line, and the stopping up of a terrace on the lands of defendant, or on the strips of land in dispute. Defendant sought to prove that this terrace had at other times been stopped up by the deceased. This was not a part of the res gestæ, and was therefore inadmissible. In cases of this kind it is not permissible to introduce details of former

controversies that shed no light on the pending issues.

■ The defendant's witness Newt Walker was questioned by the state as to whether he went before the grand jury in this case. He testified that he was summoned, went, and testified to the truth. What this had to do with the case is not apparent, but we are clear that it did not injuriously affect the defendant's cause.

■■ After the state had made out its case and rested, and the defendant had introduced his evidence and rested, the state was allowed to introduce other evidence regarding the physical facts, not strictly in rebuttal. The defendant objected and excepted to these rulings of the court. While all cases in court should proceed in an orderly manner, much must be left to the discretion of the trial courts in the admission of testimony. In this case we do not find such abuse of this discretion as would justify a review.

As to the dying declaration, we are of the opinion that a sufficient predicate was laid, when all the surrounding circumstances are considered.

■ It is further objected that the dying declaration testified to by the witness Cleo Fulks was taken down in writing by one Jones in the hospital, and that the writing was the best evidence, and therefore secondary evidence of its contents was inadmissible. There is no evidence that the statement testified about was signed by the deceased, in the absence of which it was inadmissible in evidence, Green v. State, 43 Fla. 552, 30 So. 798; Cooper v. State, 89 Miss. 351, 42 So. 666, and might have been inadmissible for other reasons not here necessary to mention.

■ When the declaration was reduced to writing, read over to, and approved by, the declarant, the document becomes primary evidence, and parol proof of it will not be received in evidence without first accounting for the written document. 1 Whar. Crim. Ev. par. 295. But in order for the document to become primary evidence it must appear to be the intelligent act of the declarant.

■ Defendant's witness Andrew Springer was asked if he had seen deceased down at a swimming pool owned by the deceased, at which time he had a gun and tried to shoot the defendant, Almon Williams. The question was indefinite as to time, and called for the conclusion of the witness.

■ The defendant excepted to that portion of the court's oral charge as follows: "If the defendant has reasonably satisfied you on his plea of self defense, that he acted in self defense, you will find the defendant not guilty." When the foregoing excerpt is taken in connection with the entire charge of the court, it is free from error.

Exception is noted to an excerpt from the court's oral charge as follows: "If any witness has testified falsely as to any material fact in the case, you have a right to disregard his or her entire testimony unless the testimony has been corroborated by the testimony of some other witness in the case." Upon a comparison of this excerpt with the court's oral charge as transcribed and certified to us, we find that the court did not charge the jury as appears in the exception, but did charge them that in the rejection of such testimony the witness must have testified willfully. As really given, the charge of the court meets the defendant's objection.

■ The charge of the court as to what constitutes aiding and abetting was free from error, and as to whether this defendant under the evidence was guilty was a question for the jury.

One of the grounds for a new trial was that pending the deliberations of the jury and while they were in the custody of the sheriff one of the jurors was separated from the rest of the panel and remained so for some fifteen minutes. The facts with reference to the separation were about as follows: After the evidence was all in the court adjourned for supper and the sheriff took the jury in a body to the jail to give them supper. While in the jail and after supper, one of the jurors went to the toilet inside the jail and about 25 feet from the other jurors. While this juror was in the toilet, the sheriff took the jury in a body back to the courthouse, locking the jail as he left. When they arrived at the courthouse it was discovered that one of the jurors was missing. The sheriff immediately took the 11 jurors back to the jail, unlocked it, and found the twelfth juror alone, and then took them all back to the courthouse in a body. The juror testified that he saw no one and had talked to no one about the case, or about anything else during the separation. The whole question was investigated by the trial judge on affidavit and otherwise.

**536**

■ It is the law that when the defendant has shown that the jury separated pending the trial, the burden is cast upon the state to affirmatively show that no injury resulted. This is a question primarily for the trial judge, who has all the parties before him and is in a better position to judge than this court. Every presumption will be indulged in favor of his finding, especially where a part of the testimony is taken ore tenus.

■ If it appears that the defendant was not injured by the separation of the jury, this court will not reverse the trial judge for failure to grant a new trial on that ground. Melton v. State, ante, p. 265, 158 So. 196; Payne v. State, 226 Ala. 69, 145 So. 650; Cobb v. State, 18 Ala. App. 556, 93 So. 225.

■ Since the trial of this case one of the jurors has become insane, and defendant insists that such juror was so insane at the time of trial. The court took testimony on this question and found that at the trial the juror was sane. We will not disturb this finding.

■ Another insistence of defendant is that one of the jurors rode to town on the morning of the trial with a kinsman of the dead man. It transpired that one Newton and Earnest Fulks had a puncture and that Earl Springer, who was afterwards selected as one of the jurors to try this case, came by in his car, picked them up, and brought them on to town, and that no conversation took place between them as to the case against the Williams'. These questions were carefully and fully investigated by the trial court, and we see no reason to disturb his finding.

■ The charge of the court was entirely too favorable to the defendant. In charging on self-defense the court charged the jury that defendant was under no duty to retreat because the evidence without conflict showed that at the time of the shooting defendants were on their own land, and then added: "The law does not require a defendant to retreat if he is on his own premises." That never has been, is not now, and this court expresses the hope that it never will be, the law. The only time a man is not required to retreat rather than to take human life is when he has "backed to the wall," or "to the ditch," or when he is within the curtilage of his

own house, which is his castle. Carter v. State, supra; Lee v. State, supra.

In the case at bar there was never a time when by retreating the defendant could not have prevented this homicide, and the court's charge gave to the defendant the advantage of a defense to which he was not entitled.

Other exceptions are examined and found to be without merit.

There is no reversible error in the record, and the judgment is affirmed.

Affirmed.