32 So.2d 223

**LAWRENCE v. STATE.**

**6 Div. 405.**

Court of Appeals of Alabama.

June 30, 1947.

Rehearing Denied Sept. 2, 1947.

C. M. Holder and Wright & Smith, all of Fayette, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

HARWOOD, Judge

This appellant was originally indicted for murder in the second degree. On his first trial under the indictment he was found guilty of manslaughter in the first degree and his punishment was fixed at imprisonment in the state penitentiary for a term of five years. This conviction and sentence was set aside upon appellant's motion for a new trial being granted by the trial court. Upon his second trial the appellant filed in the court below a plea of not guilty, and also a plea of former jeopardy as to the offense of murder in the second degree. The plea of former jeopardy was confessed by the state and the trial proceeded under the charge of manslaughter. This second trial resulted in appellant again being found guilty of manslaughter in the first degree and sentenced to a term of imprisonment of eight years in the state penitentiary.

Evidence presented by the state was directed toward showing that the appellant, his wife, Nodie, Van Monroe, and the deceased were in appellant's home early on a Sunday morning in March 1945. The deceased had been out all night, and had been drinking. The group were apparently on amiable terms and had lived as neighbors for some time. Appellant pulled a pistol from his pocket, it discharged, and the bullet struck deceased. She was taken to a hospital, and died the following day, Monday. On the Sunday deceased was taken to the hospital she was interviewed about noon by the Chief of Police of Fayette. She was in an extremely bad physical condition from her wound and stated to this

officer that she was dying. She then stated that appellant had been "playing" with the pistol as she arose and announced she was leaving. Appellant then asked her "You don't believe I'll shoot you, do you," to which she answered "No," whereupon appellant aimed the pistol at her and fired. The above declaration by the deceased was received in evidence over the objections of appellant, one of the grounds being that deceased's declaration had been reduced to writing.

On cross-examination of the Chief of Police it was developed that after the deceased had made her statement to him he left, had the statement reduced to writing, then returned and had it signed by mark by deceased, the officer signing as a witness. The defense thereafter moved to exclude his testimony as to the dying declaration on the grounds that it was not the best evidence, a documentary declaration having been made. The court overruled this motion to which action of the court the appellant duly excepted.

Testifying in his own behalf the appellant claimed that the pistol went off as he was removing it from his pocket. He denied that he intentionally pointed the weapon at deceased, or intentionally pulled the trigger.

Two friends of the deceased who had visited her in the hospital testified for the defense to the effect that the deceased had told them appellant had shot her, but "she didn't believe he meant to do it, it was an accident."

Nodie Lawrence, appellant's wife, and Van Monroe, the two witnesses to the shooting also testified for the defense, the substance of their accounts being that appellant and deceased were "playing," and the gun accidentally fired. In rebuttal to the testimony of these two witnesses the state introduced two police officers who had interviewed them shortly after the shooting. At that time the accounts given by these two as to the shooting were substantially in accord with the facts recited by deceased in her dying declaration. These witnesses denied making such statements to the officers.

■ It has repeatedly been held in this State in the case of dying declarations that where the declarant's statement is reduced to writing, but is not signed by the declarant, such writing is nothing more than a memorandum made by the hearer and he may testify as to the declaration without accounting for the writing. Kelly v. State, 52 Ala. 361; Darby v. State, 92 Ala. 9, 9 So. 429; Jarvis v. State, 138 Ala. 17, 34 So. 1025; Kirby v. State, 151 Ala. 66, 44 So. 38.

■ One of the points considered in Boulden v. State, 102 Ala. 78, 15 So. 341, 343, was the admissibility of oral evidence as to a dying declaration where such declaration had been reduced to writing. It is not shown whether in the report of this case the written declaration had been signed. However, as to the question of the sufficiency of the predicate for the admission of the oral testimony to establish the dying declaration, in said case, and as to the rule of admissibility where a signed declaration of the deceased exists, the court wrote: "The dying declarations were reduced to writing at the time they were made. The court permitted oral evidence of them to go to the jury without the production of the writing, to which the defendant excepted. Witness Banks, who testified to the declarations, and that they had been reduced to writing, was asked by the court where said dying declaration was. He replied that he had turned it over to the grand jury of the city court at the June term, 1893, and had never seen it since; that he had made diligent search among all of his own papers, and had failed to find it; and that he, together with the solicitor and clerk, made diligent search through the grand jury papers, and failed to find it. Upon this predicate the court admitted the secondary evidence. We think the predicate was insufficient. It is of the highest importance, particularly in a cause involving such consequences as this, when important evidence exists in writing, that the writing itself be produced; and its production should be required, if by any means it is practicable. Every reasonable effort which it appears might have resulted in its production should be shown to have been made without avail, before secondary evidence should be received. The reason of the rule is too obvious to require elabora-

tion. The production of the writing in the present case, rather than proof of the dying declarations by the possibly uncertain and inaccurate memories of witnesses, may have been of the last importance to the prisoner."

Some 10 years later, in Sims v. State, 139 Ala. 74, 36 So. 138, 139, 101 Am.St.Rep. 17, this question was again before our Supreme Court, though for the purpose in hand the court in the Sims case assumed that the written declaration had not been signed. In this case it is stated: "Assuming, for the purposes in hand, that the dying declarations, which were reduced to writing, but not signed by the declarant, were not lost, but actually in the possession of the prosecuting attorney, the objection taken to the oral proof of them because of the writing is without merit. Kelly v. State, 52 Ala. 361; Anderson v. State, 79 Ala. 5; Darby v. State, 92 Ala. 9, 9 So. 429; Jarvis v. State, [138] (Ala.) [17], 34 So. 1025. The defendant relies upon Boulden v. State, 102 Ala. 78, 15 So. 341, as supporting his objection. It must be admitted that this case is not in accord with those cited above, if the writing evidencing the declarations was not signed by the declarant, which fact is not shown either in the statement of the facts by the reporter or by the learned judge in his opinion. If such was the fact, the decision is wrong, and we must decline to follow it. We are not prepared to concede its correctness if the fact was that the declarant signed the writing."

The Attorney General argues strenuously that the above quoted language overrules the doctrine in question enunciated in the Boulden case, supra. We do not accord so strong a meaning to the language used, by way of dictum, in the Sims case, nor is it clear whether the court was referring to the sufficiency of the predicate for the admission of the oral testimony as to the dying declaration introduced in the Boulden case, or to the admission vel non of such testimony in case of a signed dying declaration being available. We therefore are of the opinion that the above quoted language in the Sims case cannot be considered as having overruled the doctrine established in the Boulden case as to the admission of oral testimony to prove a dying declaration where a written, signed, declaration is available.

We also note that this portion of the doctrine of the Boulden case supra, was cited with approval by our Supreme Court in Porter et al. v. Watkins, 196 Ala. 333, 71 So. 687.

The rule enunciated in Boulden v. State, supra, has been subject to criticism by Wigmore on the grounds that where a dying declaration is reduced to writing, and read over or assented to by the declarant, the writing becomes a second and distinct declaration. The oral statement is not merged in the later written one since the transaction is not a contract or other legal act between the parties and the rule of Integration, or Parol Evidence rule has no application. This authority states however that the majority of courts require the writing to be used, excluding testimony to the oral statement under such circumstances. (See Wigmore on Evidence, 3rd Ed. Sec 1450 (b)). This point is also thoroughly discussed and annotated in 112 A.L.R. beginning at page 43. Wigmore's criticism of the admitted rule of a majority of the courts is leveled at the technique by which the courts reached their conclusions, rather than at the broader policy of fundamental soundness of the conclusion. In our opinion the language of the court employed in the Boulden case, supra, succinctly and clearly establishes the desirability of the rule established in that case.

Again in 1935, in Williams v. State, 26 Ala.App. 531, 163 So. 663, 665, this court, speaking through Samford, J., reiterated the rule of Boulden v. State in the following language:

"It is further objected that the dying declaration testified to by the witness Cleo Fulks was taken down in writing by one Jones in the hospital, and that the writing was the best evidence, and therefore secondary evidence of its contents was inadmissible. There is no evidence that the statement testified about was signed by the deceased, in the absence of which it was inadmissible in evidence, Green v. State, 43 Fla. 552, 30 So. 798; Cooper v. State, 89 Miss. 351, 42 So. 666, and might have

been inadmissible for other reasons not here necessary to mention.

"When the declaration was reduced to writing, read over to, and approved by, the declarant, the document becomes primary evidence, and parol proof of it will not be received in evidence without first accounting for the written document. 1 Whar.Crim.Ev. par. 295. But in order for the document to become primary evidence it must appear to be the intelligent act of the declarant."

While the above statement from the Williams case may be considered as dictum in so far as it relates to a signed written declaration, since the court was considering an unsigned statement, it nevertheless indicates the adherence to and reaffirmation of the doctrine of the Boulden case. Furthermore, our Supreme Court denied without any opinion the petition for a writ of certiorari in this case. (See Williams v. State, 231 Ala. 127, 163 So. 667).

We therefore conclude that the trial court erred in denying the appellant's motion to exclude the testimony of the Chief of Police of Fayette relating to the dying declaration of the victim in this case for the reasons indicated.

Other propositions are urged in appellant's brief as constituting error. They are unlikely to arise at a new trial of this cause, and involve no principles of law which we deem of sufficient interest or novelty to warrant discussion, so we therefore refrain from writing to them in the interest of brevity.

Reversed and remanded.