40 .So.2d 447

**LAWRENCE v. STATE.**

6 Div. 812.

Court of Appeals of Alabama.
May 10, 1949.

C. M. Holder and Alex Smith, Jr., both of Fayette, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This is the second time this case has been before this court. See Lawrence v. State, 33 Ala.App. 224, 32 So.2d 223. The picture drawn by the evidence in the trial from which this appeal was perfected is substantially the same as drawn in the trial involving the first appeal. Except for the matters to be commented on later in this opinion there were clearly no rulings of which the appellant can reasonably complain.

This appellant has again been found guilty of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for a term of five years.

In the trial below a purported dying declaration signed by the deceased, by mark, was received in evidence over appellant's objection.

Proper predicate was laid tending to establish that the deceased was in articulo mortis, and that she was conscious of impending death. Appellant's counsel contends however that the lower court erred in admitting the dying declaration because

the deceased was not sufficiently rational mentally to permit its reception in evidence.

Mr. Joe McConnell, Chief of Police of Fayette, testified that about the middle of the day on which deceased 'had been shot in the early morning he interviewed her at the hospital. At this time, in witness' judgment, deceased talked in a rational manner. He wrote the statement down, left the hospital, and had it typed, and then returned to the hospital where he read the typewritten statement over to deceased and she signed it by mark.

The State thereupon offered the purported dying declaration in evidence. The appellant's counsel objected to its admission and stated that the defense expected to offer evidence tending to show that deceased was not mentally competent at the time the statement was made and executed.

Thereupon the jury was withdrawn from the court room and evidence was taken touching upon deceased's mental condition at the time she made and executed the alleged dying declaration.

Thereupon Mr. McConnell testified that in his judgment the deceased was rational at the time she made and executed the statement taken by him. She did not appear dopey or sleepy, and did not during his interview talk at random.

For the State Dr. J. Banks Robertson testified that he did not see the deceased until the next day after she was shot. She was in a bad condition on this day, but he would not be able to say whether or not she was rational on the day she was shot.

For the defense Dr. B. W. McNease testified that he saw the deceased upon her admittance to the hospital around nine o'clock on the morning she had been shot. She was given morphine, plasma, and glucose, and was in a state of shock.

According to Dr. McNease the effect of shock upon the mental faculties varies with the degree of shock.

As to Dr. McNease's opinion of deceased's mental condition at the time she was interviewed by Chief of Police McConnell, we think the following excerpts from his testimony will best set it forth:

"Q. Would you say she was in a rational condition at approximately noon of the day she entered the hospital? A. That would be pure guess work on my part. I don't recall—Can I qualify that statement? I do recall that she improved some after the intravenous fluid and presumably she snapped out of the shock to some extent.

\* \* \* \* \* \*

"Q. And you wouldn't attempt to say whether she was rational or irrational at the time she talked to Mr. Joe McConnell. A. No, I wouldn't say."

At the conclusion of the above testimony the court, over defendant's objection and exception, admitted into evidence the written purported dying declaration of deceased which was as follows:

"Fayette, Alabama
March 11, 1945

Buck Lawrence was playing with a gun, we asked him to quit playing with the gun. He said it was not loaded, as I got up to go, he said you don't believe I will shoot you, and I said no, and he shot me

her

X

Essie Whitfield

Mark

Joe McConnell, Chief Police."

■■ Clearly under our decision it was for the trial judge to determiné the sufficiency of deceased's mentality at the time of the making and execution of the purported dying declaration. Maxwell v. State, 32 Ala.App. 487, 27 So.2d 804, certiorari denied 248 Ala. 431, 27 So.2d 810, and cases therein cited. Furthermore, the weight and credibility of this evidence was for the jury. Maxwell v. State, supra.

In Booth v. State, 247 Ala. 600, 25 So.2d 427, 429, it is observed in regard to the admissibility of dying declarations:

"As has been often observed, no hard and fast general rule can be laid down to control the admissibility of dying declarations. The circumstances of each case must be considered—the condition of the person as well as what he says in regard to approaching dissolution. In Parker v. State, 165 Ala. 1, 51 So. 260, 262, the following excerpt from Professor Wigmore on this subject was quoted with approval:

" 'No rule can be laid down. The circumstances of each case will show whether

the requisite consciousness existed; and it is a poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances.' "

 From an examination of the evidence touching the admission of the dying declaration in the present case, we find no reason indicating that the action of the trial judge was in anywise erroneous.

We further observe that no witnesses were presented by the defense to the jury which tended to discredit the dying declaration because of the mental condition of the deceased at the time it was made and executed. On the other hand Wiley Clements, a defense witness, and who was employed in the hospital as a ward man testified that he talked to deceased about ten o'clock on the morning on which she was admitted to the hospital.

In regard to deceased's condition at this time Clements testified as follows:

"Q. Did she appear to be perfectly normal in every way when she talked to you? A. Yes sir, she appeared all right to me."

 We are clear to the conclusion that this record is free of error injuriously affecting the substantial rights of this appellant. The cause is therefore ordered affirmed.

Affirmed.

BRICKEN, P. J., not sitting.