316 So.2d 230

Elder James **KNIGHT**, alias

v.

**STATE.**

**5 Div. 280.**

Court of Criminal Appeals of Alabama.

June 17, 1975.

Rehearing Denied July 29, 1975.

Certiorari Denied Sept. 11, 1975.

Donald R. Adams, Auburn, for appellant.

**400**

William J. Baxley, Atty. Gen., and Charles N. Parnell, III, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Elder James Knight was convicted of robbery and sentenced to fifteen years.

On September 4, 1974, at approximately 3:00 A.M., a man came to the Crown Service Station in Opelika, Alabama, to purchase cigarettes. Willie Green was on duty alone and went to the office to get them.

As Green reached up behind the desk for the cigarettes, the man placed a pistol under his neck and said, "I want all your goddamn money and I want it now." Green reached in his shirt pocket and gave the man about $60. The man then demanded Green give him all the money and the keys to the desk drawer. About that time a second man entered and was given the keys to open the drawer.

Green was ordered to lie on the floor of the "oil room" while the drawer was opened and a grey metal cash box removed. Taking the cash box, the first man left the office leaving the accomplice holding Green at gun-point. In a few seconds, the second man ran from the office.

About the same time, Green heard a car start and saw it back up under a light. Both seats of the car were filled with people. Green also noticed the car carried a DeKalb County, Georgia tag, rolled at the bottom. At 4:00 A.M., he was taken to the Opelika Police station where he identified the two men who robbed him and the grey metal cash box. He testified the same car had come into the station five or six times before with appellant driving, but he could not identify the driver of the car at the time of the robbery.

At approximately 3:18 A.M., after receiving information of the robbery, officers of the Opelika Police Department stopped an automobile bearing a DeKalb County, Georgia tag. The occupants were removed and appellant was identified as the driver. In the front floorboard, the officers found a grey metal box containing bills and coins. Under the driver's seat they found a loaded nickel-plated 5 shot .32 caliber pistol and in the back floorboard, two loaded shotguns.

Lewis Edward Leslie, one of the two who actually committed the robbery, testified for the defense. Leslie stated Elder James Knight drove the car but maintained appellant had no knowledge whatsoever of the offense until the police stopped them.

Appellant admitted driving the car but denied any prior knowledge of the robbery. He testified to meeting the four on the night of September 3, 1974, when they "came to his house." Knight described three of the men as his "half brothers" and stated he was asked to drive because the others had been drinking. After leaving a "Mr. Quick" where they bought some beer, Eddie James Lewis asked to get out of the car, and he and Leslie left. The others drove to the home of appellant's mother, but were unable to get anyone to the door. Subsequently, while driving behind the Crown Service Station, Leslie whistled to appellant from some bushes. Knight then stopped and Eddie James Lewis and Leslie got into the car.

Eddie James Lewis put a box on the front seat and when appellant asked what it was, he was told to "drive on." Appellant testified he then told the others, "This anything like taking anything, I'm getting out. I'm going home tonight." Before he could do so, they were stopped by the police and arrested. At trial appellant also denied having any knowledge of the weapons found in the car.

I

After a jury was struck but before the presentation of any evidence, defense counsel, outside the presence of the jury, moved the court to exclude the venire.

He assigned as grounds for the motion that Willie Green was seen conversing with two jurors while the jury was being struck. Counsel added he did not know the extent of the conversation but requested the court to make inquiry.

The court immediately called Willie Green and outside the presence of the jury he testified as follows:

"THE COURT: Mr. Green, you are, of course the alleged victim of the robbery in this case?

"A. Yes, sir.

"THE COURT: Do you recall out in the hallway a little while ago, some 20 or 25 minutes ago, talking to any members of the jury panel in this case?

"A. Well, now, if I did, I didn't know they were jurors and we was not discussing any case whatsoever. We was talking about cat fishing and things like that.

"THE COURT: You don't know who these people were?

"A. No, sir.

"THE COURT: Did you at any time out in the hallway at any time this morning, after the court opened at 9:00 o'clock, talk to anyone about this case?

"A. No, sir.

"THE COURT: Did anyone talk to you about the case?

"A. No, sir.

"THE COURT: Did anyone ask you any questions about the case?

"A. No, sir, the case was not mentioned.

"THE COURT: And you don't know who these two people were or—how many people were there?

"A. Well, there was about four out there in the hall and whether any of them were jurors, I don't know.

"THE COURT: And you don't know the names of any of them?

"A. (The witness shook his head in the negative.)

"THE COURT: And you don't know whether they were jurors or not jurors?

"A. No, we just didn't talk about a case.

"THE COURT: All right. Mr. Lester would you like to ask him any questions?

"CROSS-EXAMINATION

"BY MR. LESTER:

"Q. Mr. Green, you say you don't know their names?

"A. No, sir.

"Q. And it's your testimony there was no statement made as to anything pertinent to this case?

"A. That's right.

"Q. All right.

"MR. LESTER: I have no further questions, Your Honor.

"THE COURT: Very well. Your motion is most respectfully overruled.

"MR. LESTER: I would like to respectfully reserve an exception, Your Honor."

■ Appellant now assigns as the only error, the court's ruling on this motion and argues that Green's conduct might have influenced the jury.

In each of the cases urged in support of appellant's contention the facts were distinguishable from those before us.

This court in *Williams v. State,* 26 Ala. App. 531, 163 So. 663, had before it a similar situation and reasoned:

"Another insistence of defendant is that one of the jurors rode to town on the morning of the trial with a kinsman of the dead man. It transpired that one Newton and Earnest Fulks had a puncture and that Earl Springer, who was afterwards selected as one of the jurors to try this case, came by in his car, picked them up, and brought them on to town, and that no conversation took place between them as to the case against the Williams'. These questions were carefully and fully investigated by the trial court, and we see no reason to disturb his finding."

In the case at bar nothing was presented showing that any of the veniremen Green spoke to were chosen for the jury empanelled to hear the appellant's case. Further, the court's timely inquiry indicated Green's conversation was confined to "catfishing" and not to any facts relating to the crime charged.

It is our judgment that the court sufficiently investigated the incident and we will not disturb his findings. *Williams v. State,* supra.

■ Much is left to the court's discretion in such matters. *McGuire v. State,* 239 Ala. 315, 194 So. 815.

Denial of appellant's motion to exclude State's evidence was proper. *Young v. State,* 283 Ala. 676, 220 So.2d 843.

We have searched the record and did not find any error.

Affirmed.

TYSON, HARRIS and BOOKOUT, JJ., concur.

CATES, P. J., not sitting.