## WILLIAM FOUSE V. STATE OF NEBRASKA.

### FILED JANUARY 23, 1909.    No. 15,789.

1. **Criminal Law: ROBBERY: EVIDENCE.** In a prosecution for robbery, it was proper for the state to prove that in the afternoon of the day that deceased was killed and robbed, and preceding the time he left his abode for the city where he was killed, he had considerable money in his possession, even though no part thereof is traced into the possession of defendant.

2. ————: **REVIEW.** An answer responsive to a question should not be stricken from the record.

3. ————: **TRIAL: DISCRETION OF COURT.** It is within the discretion of the trial court to permit a witness used by the state on rebuttal to testify, even though all witnesses were ordered excluded from the court room, and said witness had not obeyed the rule.

4. ————: **MOTION FOR NEW TRIAL: AMENDMENT: REVIEW.** This court will not review an order made by a district court refusing a defendant permission to file an amendment to his motion for a new trial, where such application is made more than three days after the return of verdict.

5. ————: **INSTRUCTIONS: CONFESSIONS.** A statement freely and voluntarily made by a defendant not induced by threats or promises, wherein he admits that he had participated in the main facts essential to constitute the crime for which he is being tried, may properly be referred to by the court as a "confession."

6. ————: ————: **REVIEW.** If the evidence does not tend to prove that defendant, at the time he committed the acts complained of, was intoxicated to such a degree as to interfere with his judgment and understanding, and defendant testified clearly and plainly to the transaction, and claimed that he acted in self-defense, this court will not examine an instruction whereby the trial court submitted to the jury the defense of intoxication.

7. ————: **CONFESSIONS.** The court may permit a police officer to testify concerning statements made to him by defendant, even though such defendant at said time was handcuffed and in the custody of said officer, where it is apparent that the statement was voluntary, and not induced by threats or promises.

8. ————: **VIEWING PREMISES: DISCRETION OF COURT.** It is entirely within the discretion of the trial court to order, or refuse to permit, the jury to inspect the scene of the alleged crime.

ERROR to the district court for Douglas county: WILLIS
G. SEARS, JUDGE. *Affirmed: Sentence reduced.*

*Frank Crawford* and *Henry G. Meyer,* for plaintiff in
error.

*William T. Thompson, Attorney General,* and *George
W. Ayres, contra.*

ROOT, J.

One Joseph Bowles came to his death as the result of
an assault committed during the night of December 11,
or the early morning of December 12, 1907. William
Fouse, who will be referred to hereafter as the defendant,
was informed against for causing said death while per-
petrating a robbery. From a conviction, which resulted
in the death penalty, defendant has appealed. Counsel
advance various reasons for reversing said judgment.

1. That the court erred in permitting a witness to tes-
tify that between lunch and 4 o'clock of December 11 he
noticed that Bowles had money in his possession. Bowles
was a soldier stationed at Ft. Crook, which is about 12
miles from the city of Omaha where the crime was com-
mitted. Bowles came to Omaha from Ft. Crook, and was
dissipating in a disreputable part of said city that after-
noon and the following night. While it is not shown by
direct evidence that defendant secured any money from
the person of the deceased, yet there is evidence that de-
fendant was with Bowles during the afternoon and even-
ing of December 11, and we think the reception of said
evidence was proper.

2. The witness Savage, who had charge of the detective
force of the city of Omaha, testified for the prosecution
that in a conversation with defendant he referred to the
fact that said prisoner's coat was stained with blood, and
told him, "You must have murdered that man," and in
response defendant, after some hesitation, said, "I will

tell the truth," and told his story. Counsel moved to strike out the latter part of said answer as not responsive to the question, which the court overruled. The answer was responsive, and the court did not err.

3. It is claimed that one Julia Rose, a witness for the state on rebuttal, should not have been permitted to testify because the court had entered a rule that all witnesses should be excluded from the court room, and that she remained after said order was made, and heard other witnesses testify, and that the court also erred in refusing to permit defendant to prove said fact. Assuming that said witness was in the court room, which she denied, it was within the discretion of the court to permit her to testify. *Bone v. State,* 86 Ga. 108.

4. That the court erred in refusing to permit defendant to amend his motion for a new trial. The application was made more than three days after return of verdict, and the ruling of the court was right. *Lillie v. State,* p. 268, *post.*

5. That the court erred in giving instruction numbered 15. Therein the court advised the jurors that a confession freely and voluntarily made by a defendant may be received in evidence, but that it was insufficient in itself to convict him, and should be received with great caution. Defendant had signed a writing wherein he admitted striking Bowles on the head with a brick, but claimed that he acted in self-defense, but admitted that he had taken Bowles' watch and knife. Defendant denied making that part of said statement relating to the taking of personal property from the body of the deceased. Strictly speaking, the statement was not an admission that defendant had committed the crime, but there was evidence of oral statements made by deceased at other times, to which the instruction would to some extent apply. Moreover, the statement was in a sense a confession, as it connected defendant with many of the main facts essential to constitute the crime charged in the information, and the in-

struction, in view of all of the evidence in this case, was not erroneous. *Austin v. State*, 15 Tex. App. 388.

6. It is urged that the court should not have permitted the witness Donohue to testify to a statement made by defendant during the time said witness was accompanying defendant from the coroner's inquest to the jail. Donohue, who is a policeman, stated that Fouse, without any threats or promises made to him, asked the witness if he thought that, if defendant pleaded guilty, he would get off with a life sentence in the penitentiary. Counsel suggest that, as Fouse was then handcuffed and in custody of the officer, his statement was not voluntary, and that Fouse testified that he had been threatened with great bodily violence unless he did confess. At the time the court admitted Donohue's testimony Fouse had not testified and a sufficient foundation was laid for the introduction of said testimony. Moreover, the court instructed the jurors that they should receive all of the testimony given by policemen and detectives with great caution, and that a confession should not be considered unless made voluntarily, and not under the pressure of threats or promises. The testimony was properly admitted.

7. Counsel contend with great fervor that instruction numbered 13, given by the court, is erroneous. Therein the court assumed to instruct the jurors concerning the defense of intoxication. It is not necessary to ascertain whether it gave defendant the benefit of the law upon this subject, because we are satisfied that the evidence did not warrant submitting that defense to the jury. Defendant was a witness in his own behalf and detailed the transaction, claiming self-defense. While he states that he was intoxicated, he does not claim that he did not know what he was doing. The testimony of the woman to whose house defendant went immediately after his encounter with Bowles shows clearly that Fouse requested admission and shelter because he was cold and had been drinking, and it is related that the woman's girl stated that defendant was then drinking. Something like an hour or

two thereafter this woman did go to defendant's aid, and found him stupid and thereupon, with the aid of a companion, she dragged him into her room, and prepared a pallet, whereon he slept until the morning, but there is not a particle of evidence that even suggests that Fouse at the time he killed Bowles did not know or appreciate the nature of said act or that he was incapable of forming an intent to rob his victim. Whatever benefit defendant received from said instruction was more than he was entitled to under the facts, and he ought not to complain.

8. It is suggested that the court abused its discretion in not permitting the jurors to visit and inspect the scene of the crime. There is a conflict in the testimony as to whether or not at said point there were bricks lying on or imbedded in the ground. This fact is important as tending, possibly, to explain that defendant did not carry to said location the brick used by him. The court had suggested that the jurors would be permitted to view said premises, but later refused to permit such examination. Counsel say that they relied on said promise, and did not prepare themselves with rebuttal testimony on said point. The jurors were permitted to inspect photographs taken December 13, which advised them quite fully as to the condition of said premises. Testimony pro and con on said subject was also given, and a view of the premises would have furnished cumulative evidence only, confused with evidence as to whether or not conditions were the same at said point as at the time Bowles was killed. The court did not abuse its discretion in ruling as it did.

9. It is most strenuously argued that the verdict is not sustained by the evidence. The testimony is conclusive that Bowles came to his death as a result of blows inflicted by some blunt instrument on his head. Defendant admits that he engaged in an altercation with the deceased and struck him at least two severe blows on the head, and that he employed a brick for that purpose, and left deceased senseless on the ground during a cold night in February. Defendant made no attempt to succor de-

ceased or to notify any person of Bowles' precarious condition. The following day a watch and knife, the property of Bowles, were found in defendant's possession. It is true that defendant testified that Bowles had assaulted and cut him with a knife because he did not comply with a request made by Bowles, and that the watch and knife were put in defendant's pocket by a colored man who has since said date left the state. From the evidence, the jury might, logically find as they did, that defendant assaulted Bowles for the purpose of robbing him, and that he carried out his purpose. The verdict is sustained by the evidence.

10. It is suggested that the death penalty ought not to be inflicted, and all members of the court participating in this decision are agreed with counsel on this point. The crime was committed in that part of Omaha inhabited by degenerates, white and colored, and where an intoxicated person would not be safe were it known, or suspected, that he had any money in his possession. Bowles had been drinking in the saloons and visiting houses of ill-fame in the afternoon and evening of the day he was killed. He had money when he started on said trip, and expended a part thereof in those places, and this fact and his condition was manifest to many individuals in that quarter. It is possible, although not probable, that defendant did not kill the deceased, or that Bowles was the aggressor, or that robbery was an afterthought. There is considerable evidence in the record tending to prove that Fouse was an industrious man and generally bore a good reputation as a law abiding citizen.

For the foregoing reasons, the judgment of conviction is affirmed, but the penalty is changed to imprisonment in the state penitentiary at hard labor during the natural life of defendant.

AFFIRMED: SENTENCE REDUCED.

ROSE, J., not sitting.