NORMAN BRUCE McCLEARY

*vs.*

STATE OF MARYLAND.

*Criminal law: murder; evidence; experts; confession by trav-*
*erser; admissibility; question for court; appeals.*
*Counsel: right of accused.    Motion*
*for re-argument.    New evidence.*

A doctor who has been shown to have the requisite technical
training and who was present observing the conduct of the
autopsy, is a competent witness to testify, in a trial for murder,
as an expert as to the cause of death.                    p. 397

In a trial for murder, it was offered to prove that a letter
had been written from another city and addressed to the mur-
dered woman at her home by her daughter, and should have
been delivered to her, or to her home, at or about the time of
the murder; but that this letter was missing when the premises
were examined after the murder, although other mail that had
been left by the carrier was found: *Held,* that such evidence
was admissible, as tending to show one of the means by which
the traverser might have learned the address of the daughter,
which otherwise he would not have known; also as showing his
movements and his motives; and under such circumstances sec-
ondary evidence of the contents of the letter could be given.

p. 398

At the trial of a person accused of murder, his movements
and declarations between the time of the commission of the
crime and his arrest, are important, and evidence as to them is
admissible.                    p. 399

The burden of proof is on the State to show that a confes-
sion of crime has not been obtained by improper means, and

that it is the voluntary act of the traverser, induced by no hope
of favor or fear of harm.                    .        p. 399

It is the fundamental duty of the Court in all cases to pass
upon the admissibility of evidence.                    p. 400

A mere confession of crime constitutes no crime; it is only
evidence tending to show that a crime has been committed, and
it may or may not be believed by the jury, or by the Court sit-
ting as a jury, in any particular case; but the admissibility of
a confession, as evidence to be submitted to the jury, is a ques-
tion for the Court.                    .        p. 400

The fact that a confession was made while the accused was
in custody, and bound or handcuffed, does not of itself render
the confession inadmissible.            ·            p. 401

It is the right of one accused of crime to be represented by
his own counsel, but the fact that one accused of crime makes
a confession when unrepresented by counsel does not of itself
affect the admissibility of such confession.            p. 400

In determining whether a confession of crime is admissible
in evidence, it is not a question simply whether the traverser
was or was not at the time mentally agitated, but whether he
was so far deprived of his sense of reason as not to be respon-
sible for what he may have said or done.            p. 402

On appeal to the Court of Appeals, by the traverser in a
criminal trial before the Court sitting as a jury, as to the rul-
ing of the trial Court on the admissibility of a confession in
evidence, the question is not so much as to the admissibility
*vel non* of the confession, as it is a question of the weight to be
attached to it by the Court sitting as a jury.            p. 404

Although evidence offered, to show the circumstances under
which a confession was made, may not be such as to render the
confession inadmissible, yet the evidence may be offered as af-
fecting the weight of the evidence.                    p. 408

Facts which at most could only form a basis for a motion for
a new trial, if presented in time in the lower Court, can not
form the basis of a motion for a re-argument in the Court of
Appeals.                                pp. 409-410

*Decided January 14th, 1914.*

Appeal from the Circuit Court for Montgomery County, to which the case had been removed from Washington County. (Urner, C. J., Peter and Worthington, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Pattison, Stockbridge and Constable, JJ.

*Charles D. Wagaman* and *Frank G. Wagaman* (with whom were *J. Lloyd Harshman* and *Thomas Dawson* on the brief), for the appellant.

*Edgar Allan Poe, the Attorney-General,* and *Scott M. Wolfinger, State's Attorney for Washington County,* (with whom was *W. Outerbridge Spates, State's Attorney for Montgomery County,* on the brief), for the appellee.

Stockbridge, J., delivered the opinion of the Court.

The record in this case presents for the consideration of the Court sixteen exceptions, all relating to testimony. Of these the 4th, 5th, 6th, 7th, 8th, 9th, 10th, 15th and 16th in one way or another are with regard to an alleged confession of the traverser of the crime of murder, committed in the City of Hagerstown, in the month of August, 1912, and will be considered one in connection with the others. The traverser was indicted by a Grand Jury of Washington County, and the case was subsequently removed to Montgomery County, where it was tried before the three judges of that circuit without the intervention of a jury. The trial resulted in a verdict of murder in the first degree, and the accused was sentenced to imprisonment for life in the penitentiary. The importance of the case rests not alone upon the seriousness of the crime charged, but on the fact that it

presents for the consideration of the Court, the admissibility of a confession of the accused, alleged to have been procured by what are sometimes spoken of as "sweating," "sweat box" or "third degree" methods.

The first exception was to permitting Dr. Wroth, a physician who was present at the autopsy, to state his opinion of the cause of the death of Mrs. Henry, the alleged victim. No sufficient reason has been advanced why this evidence should have been rejected. The doctor had been shown to have the requisite technical training, he was present observing the conduct of the autopsy, and the question called for, and only called for, his opinion, from what he had seen, as to the cause of the death. The ruling of the trial Court in permitting the question was clearly within the limits of proper expert testimony.

The second exception related to the finding of a sheet in the jail where the prisoner was confined. It is claimed by the defense that the first night that the traverser was in the Hagerstown jail, an attempt was made to terrorize him by the use of a sheet, by some one connected with the jail, so as to create an impression of ghosts. But it was not claimed by the defense that the sheet, in regard to which evidence was sought to be introduced, was found until about six months after the traverser was confined there, or that the defense would be in any way able to connect up the sheet referred to, as being the sheet claimed to have been used the night that McCleary was brought to the jail. The evidence of the sheriff's son was to the effect that no sheet had been used in connection with any prisoner until sometime after McCleary had been incarcerated, and the proposed offer on the part of the defense was, therefore, too remote, and the application for the writ of *habeas corpus ad testificandum* was properly refused.

The 11th, 13th and 14th exceptions all relate to a letter testified to have been written in Washington, by a daughter of the deceased Mrs. Henry, and addressed to her mother, in

Hagerstown. The 11th exception is directed to the point that no such letter was found at the residence of the deceased when the door was first forced open, although other mail was found there; the 13th and 14th exceptions had to do with the addressing and mailing of the letter in question, and to what it contained with regard to the Washington address of Miss Henry. The effect of these several questions was to show that after Miss Henry's arrival in Washington she wrote to her mother, that the letter was properly addressed and deposited in the mail, but that it was not found in the residence of the deceased by those who first entered there after the death of Mrs. Henry was discovered, although other mail was found, from which it might be inferred that the letter had been abstracted by some one after the death of Mrs. Henry and before the discovery of her death. All of this was clearly competent evidence, though only circumstantial in its nature, and it laid a proper foundation for the offering of secondary evidence as to the contents of said letter, which, so far as the traverser was concerned, would be admissible as showing one mode by which he might have obtained the address of Miss Henry in Washington.

Nor is there any error perceived to have been committed by the trial Court in admitting the evidence involved in the 12th bill of exceptions; if, as claimed by the State, a murder had been committed, the movements and declarations made by the traverser between the time of the commission of the crime and the time of his arrest could hardly be other than important as reflecting upon his culpability *vel non,* and especially was this the case when those movements or declarations had reference in any manner to one so nearly related to the deceased as a daughter.

As already noted all of the remaining exceptions have reference in one way or another to the admissibility of a confession by the accused of his connection with Mrs. Henry's death. The subject of the admission of confessions of one accused of a crime is one which has been before this Court

in a number of cases, to some of which reference will here-
after be made, and is very elaborately and fully discussed in
a particularly able note to the case of *Ammons* v. *State,* 18
L. R. A. (N. S.) beginning on page 768.   At the outset it
is to be observed that the burden of showing that a confession
of crime has not been obtained by improper means, that it is
the voluntary act, uninduced by hope of favor or fear of
harm, is one which the law casts upon the State.   *Nicholson*
v. *State,* 38 Md. 140; *Green* v. *State,* 96 Md. 384; *Bram* v.
*U. S.,* 168 U. S. 532; *Watts* v. *State,* 99 Md. 30; *Toomer* v.
*State,* 112 Md. 292; and where this obligation is not satis-
factorily met, it is improper to admit the confession.   As
was said by the late JUDGE ROBINSON, in *Biscoe* v. *State,*
67 Md. 6: "There is no difficulty in regard to the rule itself,
the trouble is in the application of the rule to the facts of
each particular case, that is whether it was a free and volun-
tary confession, or whether it was procured by the influence
of another under a hope of favor or advantage if made, or
fear of harm, or disadvantage of some kind, if withheld.
It is not of course an easy matter in all cases to measure the
force of the influence used, or to decide as to its precise
effect upon the mind of the prisoner, much, very much de-
pends upon the age, the experience, the intelligence and char-
acter of the prisoner.   And it may be the Courts leaning to
the side of mercy have in some cases excluded confessions,
when it is difficult to see how the alleged inducement had
any influence on the mind of the prisoner."

In some States this has been left to the jury to be deter-
mined by that body as a question of fact, whether or not, that
which is offered as a confession, was in fact free and volun-
tary, or whether it was the result of representations, induce-
ments or threats, and therefore, to be excluded.   In other
States, among which is Maryland, this is held to be a ques-
tion to be determined by the Court, as a ruling upon admissi-
bility of evidence, before the confession itself can be offered,
*Biscoe* v. *State,* 67 Md. 6; and this rule seems eminently

proper. It is the fundamental duty of the Court in all cases
to pass upon the admissibility of evidence. A confession
alone constitutes no crime, it is only evidence tending to show
that a crime has been committed, and it may or may not be
believed by the jury, or by the Court, sitting as a jury, in
any particular case, but the admissibility of it as evidence to
be submitted to the jury is distinctly, under the system of
law prevailing with us, a question for the Court.

Three reasons are assigned by the counsel for the appellant
as the grounds of objection to the admissibility of the confes-
sion; these are: (1) That the appellant during the day of
the alleged confession, and prior thereto, was demanding the
advice and assistance of counsel, and that the State prevented
his securing counsel at that time by intercepting and sup-
pressing the prisoner's written message to counsel; (2) That
the alleged confession was involuntary; (3) That at the time
of the making of the alleged confession the appellant was
mentally irresponsible. These will be considered seriatim.

Upon the first of these branches the case has been unfortu-
nately complicated by acts which cannot be regarded in any
other light than an excess of zeal on the part of the prosecut-
ing officers of Washington County. It is of course the right
of one accused of crime to be represented by counsel of his
own selection, and it is equally true that the State's Attorney
in this case did intercept, interfere with and to a large ex-
tent prevent the accused from communicating with counsel,
for which there can be no justification advanced; but the
question is not the propriety or the impropriety of the action
of the State's Attorney of Washington County, but the ad-
missibility or inadmissibility of a confession made by the
accused in this case. The fact that one accused of crime
makes a confession when unrepresented by counsel, has been
before the Courts in several cases, and it has been held to
constitute no valid ground for the rejection of the confession.
*State* v. *Gorham,* 67 Vt. 365; *State* v. *Patterson,* 68 N. C.
292; *People* v. *Siemsen,* 153 Cal. 387. In *Commonwealth*

v. *Sturtivant,* 117 Mass. 122, the prejudicial statements were made to a State constable by the accused, while the latter was in jail, at a time when the traverser had no counsel, and was not informed that he need not answer, or in any way advised of his right to remain silent, but this was held not to render the statements inadmissible, it appearing that no inducement or influence of any kind was made to obtain the confession.

What is offered as the confession was made by McCleary in the sheriff's office attached to the jail, to which he had been brought handcuffed to an officer. It was undeniably made when in custody, possibly, probably—handcuffed or in some manner bound. But none of these conditions are sufficient of themselves to render the confession inadmissible. *Birkenfeld* v. *State,* 104 Md. 253; *State* v. *Patterson,* 73 Mo. 695; *Stallings* v. *State,* 47 Ga. 572; *Fouse* v. *State,* 119 N. W. 478; *Pierce* v. *U. S.,* 160 U. S. 355; *Sparf* v. *U. S.,* 156 U. S. 51; *State* v. *Rogers,* 112 N. C. 874.

The third reason advanced on behalf of the traverser against the admissibility of the confession is his supposed mental irresponsibility at the time when the confession was made. He had been arrested in the City of Washington on the Thursday following the finding of Mrs. Henry's body, had been confined in the station house in Washington on Thursday night, where according to his own story he obtained but little rest or sleep. He was taken to Hagerstown on Friday and placed in jail, and apparently slept but illy on that night. According to testimony of other prisoners in the jail he did a great deal of "hollering," talked of seeing the corpses of his parents lying on the stairs, imagined himself to be fighting wild beasts, spoke of hearing groans about his cell, of seeing a woman in it with tongue protruding, or of there being a lizard about; is described by his counsel who saw him on Sunday as showing marked evidence of nervous excitement, with blood-shot eyes, irrational in his talk, incoherent in his statements, and by physicians who

saw him subsequently, and who testified for the defense, as being in an irresponsible condition. He had also on Saturday evening set fire to and burned the blankets in his cell. As opposed to this we have the evidence of the State's Attorney, and of those attached to the jail, including the jail physician, to the general effect that while excited he was far from being irrational, in fact was quite the reverse on Saturday evening, at the time when the confession is testified to have been made and signed. William Logan, an entirely disinterested witness, who saw him on Sunday morning, and who had known him for a long time, gives strong evidence in favor of his entirely rational condition at the time when he saw him, some fifteen or eighteen hours after the confession is claimed to have been made. It is true that the jail physician had, either on Friday or Saturday night, given him morphine, apparently for the purpose of quieting his nerves; that he was in a condition of mental excitement is undoubtedly true, but the question is not simply, whether he was mentally agitated, but was he so far deprived of his sense of reason as not to be responsible for what he may have done or said. It is to be borne in mind, that he was placed in jail only a few days after the middle of August, when the weather was warm, and that for twenty-four hours he had been in solitary confinement, a fact which would not of itself render the confession inadmissible, and these physical discomforts which might tend to produce a condition of sleeplessness may have been augmented by the setting fire to his blankets a short time before making the confession, with the necessary accompaniment of added heat and smoke; but the one factor which stands out prominently is the traverser's own testimony with regard to all that took place, to statements made to him and by him during this period of assumed mental irresponsibility. In a long line of cases where there was a condition of greater or less absence of mental faculty as the result of intoxication such fact has been held not to constitute a valid objection to the admission of the confes-

sion. *State* v. *Berry,* 50 La. An. 1309; *Lester* v. *State,* 32 Ark. 727; *State* v. *Grear,* 28 Minn. 426; *Eskridge* v. *State,* 25 Ala. 30; *State* v. *Feltes,* 51 Iowa, 495, where the accused was suffering from delerium tremens; *People* v. *Kent,* 83 N. Y. S. 948; and *People* v. *Miller,* 135 Cal. 69, where the prisoner was not in full possession of his faculties, by reason of a bullet wound in his head at the time when the confession was made. Cases of excitement of a different character have been passed upon and the same rule has been followed. Thus in the *Birkenfeld case,* 104 Md. 253, the accused was a native of Russia, sixteen years of age, under arrest for murder and much excited; and the facts as testified to in *Rogers* v. *State,* 89 Md. 424, where the confession was made in the presence of a weeping sister to a police sergeant in the station house, were calculated to produce an abnormal excitement, but the confessions were not held to be inadmissible upon this ground. In *Young* v. *State,* 90 Md. 579, the defendants who were accused of murder, were called out of the house at dead of night by the sheriff, and charged with the crime, and were evidently much excited and frightened, but that fact was held not to render the confession inadmissible, no threat having been made and no hope or promise of benefit having been held out. See also *Herndon* v. *State,* 50 Texas Crim. Rep. 552; *State* v. *Leuth,* 5 Ohio C. C. 94. The decision of this Court in *Watts* v. *State,* 99 Md. 30, is sometimes referred to as opposed to this view. But a careful examination of that case will show that what the case really hinged upon was the failure of the State, in the burden which the law places upon it, in showing that the confession had not been obtained from the accused by improper means. It is not for this Court to find as a fact from the evidence the degree of mental responsibility or irresponsibility of Mc-Cleary at the time of the confession, and upon this branch of the case it may be said with all propriety, as was said in the case of *Shifflet* v. *Commonwealth,* 14 Gratt. 652, when speaking of the question of the voluntariness of a confession,

"A great deal must be left to the discretion of the judge in such cases, who must decide whether under all circumstances the words used, expressed or implied a promise or threat, and were so understood by the prisoner;" so here, there was direct conflict as to the mental condition, in which the appellant appeared to be to different persons, which condition may have been feigned or may have been real, and the trial Court, with the benefit of the presence, appearance and manner of the witnesses before them, coupled with the accused's own clearness of recollection of events at the time when he is supposed to have been mentally unhinged, did not find sufficient evidence upon which to exclude the confession. It was a question, not so much of the admissibility *vel non* of the confession, as of the weight to be attached to it by the Court sitting as a jury. Reversible error in the admission of the confession cannot, therefore, be predicated upon the ground of mental irresponsibility.

This leaves for consideration the second of the objections of the defense, viz., that it was not the voluntary act of the traverser. As was said in *State* v. *Willis,* 71 Conn. 293: "The word 'voluntary' is used not merely as contrasted with compulsory, but with a technical meaning indicating certain surrounding circumstances." What were these circumstances? The accused was arrested in a public park in the City of Washington by the police of that city, acting in compliance with the request of the Chief of Police of Hagerstown. He was taken to the office of the District Attorney, where he was subjected to an examination, then to the station house, where he was again that evening subjected to further examination. On the following day he was taken to Hagerstown, placed in jail there, and on the evening of his arrival was again examined, both by the State's Attorney and by one or more of the officers connected with the police force of Hagerstown. With regard to what transpired in Washington during his examinations there, nothing need be said. Certainly nothing which he said or did there could be construed into a confes-

sion, and if he had been threatened, or if a promise had been made while there, it is hard to see how they could have had any operative force whatever after his removal to Hagerstown. According to McCleary's own version, he had been called a liar in Washington, was prodded with questions after his arrival in Hagerstown, and was told by the State's Attorney to come across, that it would be easier for him." It is admitted by the officers that from the time of McCleary's arrival in Hagerstown they were endeavoring to obtain a confession from him, which he as persistently refused to make. Then as Saturday evening was closing in having burned his blankets in his cell, and having prayed repeatedly, he was again interviewed by the State's officers, and as they were starting to leave, according to the State's evidence, they were called back by the traverser, and the confession of the crime made to them orally, after which he was taken to the office of the sheriff adjoining the jail, where his verbal confession was reduced to writing and signed by him, after which his quarters in the jail were changed, so that he was no longer in solitary confinement, and on the following Sunday morning his confession was repeated.

Does this chain of circumstances indicate that the confession was produced as the result of the hope of favor or fear of harm?

Allusion has already been made to the excess of zeal of the State's Attorney in this case. Whether in that zeal he transcended his duties and infringed on the rights of the accused must be answered from the adjudicated cases as we find them. In the case of *Biscoe* v. *State, supra,* the accused was interviewed five times by the committing magistrate for the purpose of obtaining a confession, and although pressed time and again, and that too by one in authority, he persisted in denying his guilt, until he was told it would be better for him to tell the truth *and have no more trouble about it,* whereupon the confession was made, but held by this Court as improper to go to the jury. In the case of *Watts* v. *State,*

*supra,* the accused was told by a reporter that *"it would be possibly better* for him if he would make a clean statement," which this Court construed as an inducement and excluded the confession. In the case of *Ross* v. *State,* 67 Md. 286, the only statement which appears to have been made to the prisoner was that of the Marshal of Police, who said to the accused: "You are not telling me the truth"; nothing being said in the way of promises or threats, and the confession was held admissible; in *Rogers* v. *State, supra,* a police sergeant said to the accused, "If your sister is innocent why don't you tell all about this murder of Abraham Lewis, if your sister is innocent you are the only one who knows so and it is your duty as a man to tell what you know about it." This did not involve anything in the way of either promise or threat and the confession was admitted. In the *Commonwealth* v. *Cuffee,* 108 Mass. 285, a prisoner suspected of murder was taken from a cell at 10 o'clock at night and questioned until midnight, without warning him of his right not to answer unless he chose to do so, or offering him opportunity to consult with counsel or friends, but this was held not be render his statements inadmissible in the absence of threats or promises, other than might be inferred from such circumstances; the reason for the exclusion of such confessions being, not because of any wrong done to the accused in using them, but because he might be induced by the pressure of hope or fear to admit facts unfavorable to him, without regard to their truth, in order to obtain the promised relief or avoid the threatened danger. And in the *Commonwealth* v. *Myers,* 160 Mass. 530, the Court said, that "confessions were not to be excluded because they were the admission of the person charged with the commission of a crime, but only where the circumstances were such under which they were made, that a reasonable presumption arises that they might have been induced by a promise or threat from one in authority and consequently were open to the objection that they might not be true." And in *People* v. *Wolcott,* 51 Mich. 612, JUDGE

Cooley said that, "No reliance could be placed upon admissions of guilt so obtained for the very obvious reason that they were not made because they were true, but because, whether true or false, the accused was lead to believe that it was for his interest to make them." In *O'Brien* v. *People*, 48 Barb. 274, the Court held, that "confessions were excluded only when they were made under circumstances that might tend to produce doubt as to their truth, arising from the operation of hope or fear in the mind of the prisoner," but that when made under the effect of threats the admissions were excluded as matter of law. Many other cases might be cited to this same effect.

Let us now examine in view of the law, the facts of this case.

The evidence of the traverser and of the State's Attorney is in direct conflict at many points, points many of them vital to the determination of the case. Thus, as to the caution given to the accused before any statement had been made by him; the question of threats or inducements, and to some of the surrounding circumstances attending the interview between the State's Attorney, Miss Henry and the accused. Naturally considering the situation in which he was placed there was the strongest motive for the accused to color his testimony in a manner most favorable to himself, and if this case were in a position of doubt because of an even balancing of the testimony of the accused and the State's Attorney, authority is ample for the rejection of the confession. On the most vital part of the case there is, however, evidence tending to corroborate the State's Attorney; thus the chief of police and the witness, Barber, testify to the caution given to the accused that anything which he might say would be used against him; the traverser is corroborated by a fellow prisoner, to the effect that the State's Attorney told the accused to "come across" during the interview at which Miss Henry was present, but this witness did not hear the statement which the traverser alleges to have been made to him,

that it would be easier for him if he did, language which would in itself have imported a promise. The other language which the traverser gives is attributed to a detective in Washington, to the effect, "You might as well take the God damn liar back and lock him in the cell"; but this was in Washington, and cannot be held to have been operative two days later in Hagerstown under different surroundings. He further testified that in Hagerstown the State's Attorney, after urging him to confess, "said something about sending you back until you did say it," though the traverser seems a little in doubt as to what may have been meant by the expression. The evidence of the traverser himself abounds in contradictions, but a careful examination and re-examination of the evidence results in the conclusion so aptly stated by JUDGE URNER in his dissenting opinion upon the admissibility of the confession, when he says, "I think it proper to state that my individual opinion has not been influenced by any suggestion or testimony tending to support the theory, or offered for the purpose of supporting the theory, that there was any attempt on the part of the officials of Washington County to terrorize the prisoner." The evidence in this case has been examined with much care upon this point, following the precedent laid down in *Nicholson* v. *State*, 38 Md. 140, and the conclusion is, that the evidence produced on behalf of the defense is not sufficiently clear as to the involuntary character of that confession to exclude the admission of it, but rather is to be considered as affecting the weight to be accorded to it. This is a distinction not always drawn, but which is especially emphasized in the language of the Court in *State* v. *Willis*, 71 Conn. 293, when that Court said: "The English decisions which have developed the existing practice in excluding admissions are not concerned with their admissibility as relevant, but mainly, if not wholly, with their weight. The question is, shall this evidence, admissible as relevant, be excluded because in the opinion of the judge the conditions of the declaration come within those conditions that make such an admission too unreliable to go to the jury?

and the decisions illustrate the diverse exercise of this judicial discretion."

This Court is not to be understood as even passively sanctioning the treatment of the prisoner preliminary to the making of the confession. All that this Court has to do, is to deal with the admissibility *vel non* of the confession. The confession was admitted below by a divided Court, but the verdict of guilty was pronounced by a unanimous Court. It is impossible to say that the circumstantial evidence in the case was not in itself sufficient to have justified the finding of the verdict of guilty, though that is a question which does not enter into this appeal.

It follows from what has been said that no reversible error is found in the admission of the confession, and the judgment below will be affirmed.

*Judgment affirmed, with costs.*

Memorandum, upon motion for a re-argument:

STOCKBRIDGE, J., delivered the opinion of the Court.

Since the rendering of the opinion in this case on the 14th of January, there has been filed an unusually elaborate motion for a rehearing, and also an affidavit intended to be in support of the motion. The substance of the affidavit is that since the filing of the opinion, in a conversation with the attorney for the traverser, Dr. Branham, a witness who was present at the autopsy and had testified for the State as to the cause of death, had said that he had committed an error in his evidence. Assuming everything contained in the affidavit to be true, it is impossible to see how it can properly be considered by this Court. The matter contained in the affidavit was not before the Court below at the time of the trial there. Even if the facts set out in the affidavit could properly be regarded in the light of newly discovered evidence, which

they clearly are not, they would constitute at best a ground upon which to found a motion for a new trial in the lower Court, if they had been presented at the proper time, but not a basis for a re-argument in this Court.

It appears from the motion for a re-argument that the counsel for McCleary misapprehended the language of this Court in its opinion when it was said, "that the evidence produced on behalf of the defense is not sufficiently clear as to the involuntary character of that confession to exclude the admission of it." There was no intent to depart from the well recognized rule that where the confession of the commission of a crime is sought to be offered in evidence, the burden is upon the State to show that the confession so offered was the voluntary act of the accused, but in the view of this Court that burden had been met. The rule does not of course mean that such evidence shall be absolutely uncontradicted. In most cases where an alleged confession is offered there is some contradiction as to the circumstances under which it was made, and it then becomes necessary for the trial Court to weigh the evidence, as was done in *Nicholson* v. *State,* 38 Md. 141, and admit or reject the confession according as the Court shall conclude that the State has met the burden of establishing the voluntary character of the confession. That was what was done in this case. But beyond and in addition to this, while the evidence given as to the circumstances under which the confession was made is to be considered in determining its admissability, it is also to be considered in determining the weight to be given to the facts embodied in it, that is the substance of the confession itself.

The motion for a re-argument will be overruled.