# ROBERT ROBINSON

## *vs.*

# STATE OF MARYLAND.

*Criminal Law—Confession—Harmless Error—Evidence.*

A statement by the defendant as to his movements on the day of the murder, which, if true, excluded him from any participation in the crime, was not inadmissible because there was no preliminary proof that it was voluntary, as it was subsequently proved to have been. p. 140

In so far as a statement by defendant amounted to a confession of guilt, the refusal to allow him, before the admission of the statement in evidence, to testify as to its involuntary character, was error. p. 140

Error in refusing to allow defendant to testify and offer evidence as to the involuntary character of an alleged statement by him constituting a confession, before its admission in evidence, *held* harmless in view of his subsequent denial that he had made any of the statements relied on by the prosecution.

pp. 140, 141

In view of defendant's denial that he had made any of the statements relied on by the prosecution, it was proper to refuse to permit him subsequently to be asked whether, if any statement had been made by him, it was made voluntarily. p. 141

*Decided March 2nd, 1921.*

Appeal from the Criminal Court of Baltimore City (DOBLER, HEUISLER, and DAWKINS, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Milton Dashiell,* for the appellant.

*Alexander Armstrong, Attorney General,* with whom were *Lindsay C. Spencer, Assistant Attorney General,* and *Robert F. Leach, State's Attorney for Baltimore City,* on the brief, for the appellee.

URNER, J., delivered the opinion of the court.

The appellant has been convicted of murder in the first degree and is under sentence of death. The homicide charged against him was committed in Anne Arundel County. After his indictment in that jurisdiction the case was removed to the Criminal Court of Baltimore City, where it was tried before JUDGES HEUISLER, DOBLER, and DAWKINS, a jury trial being waived. The victim of the murder was James Elder Tydings, and the scene of the crime was in the woods near Town Neck Church on the State Road from Annapolis to Baltimore. Mr. Tydings was on his way home from work on a Saturday afternoon when he was killed and robbed. The weapon used was a large stone with which his skull was crushed and which was found near his body.

Within a few hours after the murder was committed the appellant left his home in the neighborhood and went to Virginia. He was arrested there about two weeks later. After being brought back to this State he was questioned as to his movements on the day of the murder. His first statement was to the effect that he stopped work at Round Bay on that day at twelve o'clock and returned to his home, where he ate his dinner and remained there, mending shoes and getting ready to leave, until about three o'clock, when he went to Boone Station and boarded a train for Baltimore, where he took a train at four-forty-five for Washington, and went on to Virginia the same evening on a visit to his former home at Forrest Depot in that State.

In the course of another interview, which occurred on the day following the one just referred to, the appellant stated that after returning home from work and eating his dinner, on the afternoon of the murder, he went down to the store to buy a pair of socks, and while he was there a truck came along the road on its way to Baltimore, and he jumped up on the truck and rode along with the driver awhile, inquiring whether there was any work he could get in Annapolis, and while thus talking he rode further than he intended; that he got off the truck after passing Town Neck Church and walked

back along the road and went into the woods, where he saw Mr. Tydings in the act of driving away some colored boys who were playing "craps"; that he saw Mr. Tydings hit one of the boys, and saw one of them wrestling with him; and that he (the appellant) then left the woods and went home. When asked whether he would point out the place where he saw Mr. Tydings and the boys, he consented to do so, and went with two officers in an automobile to within a short distance of the woods in which the murder was committed, and there conducted them on foot to the spot where the body of Mr. Tydings was reported to have been found. Later on the same day the appellant was confronted with the three boys he had mentioned as having been in the woods with Mr. Tydings, and persisted in that assertion in spite of their denials.

In an interview two days afterwards with Mr. Green, the State's Attorney for Anne Arundel County, the appellant stated that when he went into the woods, on the afternoon in question, he saw Mr. Tydings, who cursed him and struck him with a stick and he returned the blow, also using a stick; that with a second blow he knocked Mr. Tydings down, and then went through his pockets and got twelve dollars in paper money, and looked through the basket of provisions he had been carrying and took out some pork chops, and then went home where his wife cooked the chops, and after they were eaten he changed his clothes and left for Virginia by way of Baltimore and Washington as already narrated. Upon being questioned further by Mr. Green, the appellant said that he struck Mr. Tydings with a stone, and not with a stick, but did not intend to kill him and did not know that his blow was fatal. He also admitted that he had not been struck at all by the victim of his attack.

The effect of the other testimony in the record need not be stated, as the nine exceptions taken at the trial relate solely to the admissibility of the appellant's declarations to which we have referred.

The first and second exceptions were reserved on the theory that the original statement made by the appellant as to his movements on the day of the murder was not shown to have been voluntary, and that it was inadmissible without preliminary proof to that effect. In the statement to which these exceptions relate there was no admission, but a denial, of the appellant's guilt. It was a narrative of his movements which, if true, excluded him from any participation in the crime. The subsequent testimony proved that it was voluntary. There was no error in the rulings on this point.

The third, fourth, fifth, sixth, seventh and eighth exceptions were taken to the refusal of the trial court to permit the appellant to testify as to the involuntary character of his other declarations prior to their admission in evidence. In so far as the statements thus attributed to the appellant amounted to a confession of guilt, the question as to whether they were made voluntarily, or were induced by threats or promises, was a subject for preliminary inquiry and determination, with the burden of proof, as to their having been properly obtained, resting upon the prosecution. Upon this primary and essential question the accused had the right to testify and offer evidence prior to the admission of his alleged confession. *Biscoe* v. *State,* 67 Md. 6; *McCleary* v. *State,* 122 Md. 394; 16 *C. J.* 734. The rulings upon the exceptions directed to this point were consequently erroneous, and if they had resulted in any possible prejudice to the appellant, the judgment would have to be reversed and the case remanded for a new trial. But the testimony of the appellant subsequently offered and admitted, in regard to the various declarations to which these exceptions refer, shows conclusively that he was not injured by the earlier exclusion of his testimony on that subject. The proffer had been to prove by him that the declarations were not voluntary, but when testifying later he denied that any of them had ever been made at all. It is evident, therefore, that if the rejected proffer had been accepted, it would not have been supported by the appellant's testimony. Obviously he was not

harmed by the refusal to permit him to testify at one stage of the case in support of a theory which he definitely rejected when he came to make his formal defense. His denial that he had made any of the statements proven by the State was, of course, given due consideration by the judges to whom the issue of his guilt or innocence was submitted, but if his testimony to that effect had been received before any of his alleged declarations were admitted, it is not to be supposed that they would have been excluded merely because of his unsupported contradiction of the strongly corroborated witnesses for the State.

The ninth and last exception was taken because the court below refused to permit the appellant's counsel to ask him the following question: "If any statement has been made by you, did you make that statement voluntarily or were you required to make it, coerced to make it, persuaded to make it, or asked to make it?" The appellant had just denied emphatically that he made any of the statements upon which the prosecution relied, and the hypothetical question we have quoted was inconsistent with that position. The ruling on this exception was proper.

The judgment will be affirmed, as we find no reversible error in any of the rulings presented by the record for our review.

*Judgment affirmed.*