STANLEY LUBINSKI *v.* STATE OF MARYLAND

[No. 18, October Term, 1941.]

2

*Decided November 6, 1941.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Marion A. Figinski,* for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General,* and *Paul C. Wollman, Assistant State's Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* on the brief, for the State.

MARBURY, J., delivered the opinion of the Court.

The appellant was tried in the Criminal Court of Baltimore City before the judge sitting as a jury on three indictments heard together by agreement. He was found guilty on several counts in each of two indictments, and found not guilty on all counts in the third, and was sentenced to nine years in the Maryland Penitentiary on each indictment on which he was found guilty, the sentences to run concurrently. The charge in each case was robbery with a deadly weapon, the two convictions being in the two cases known in the record as the Virgil Blair case and the Bernard Freeze case.

This appeal is from the rulings of the Court on evidence, and the specific points are made in three exceptions, the first of which relates to the admission in evidence of a gun, and the second and third to the admission in evidence of an alleged confession.

Virgil Blair was a taxicab driver in the employ of the Belle Isle Taxi Company and on December 2, 1936,

he was held up by two passengers, who took his money and his car. Bernard Freeze was also a taxicab driver for the same company, and he was similarly held up on December 8, 1936, by two passengers, who took his money, watch, chauffeur's hat, shield, badges and car. The appellant was arrested in Geneva, New York, sometime in December, 1936, and Sergeant Considins, a New York officer, first saw him at Geneva police headquarters on December 24, 1936. He and another sergeant took the appellant and another boy from Geneva to Niagara Falls. The appellant was not returned to Baltimore until February, 1941, apparently on account of some confinement in New York, as the evidence shows that a detainer was placed against him. He was delivered to Lieutenant Vogelsang at Attica, New York, on February 4, 1941.

Sergeant Considins testified that during the trip with the appellant from Geneva to Niagara Falls in December, 1936, he and another sergeant questioned the appellant in regard to the guns that were found in the car, when the appellant and the other boy were arrested by Lieutenant McDonough of the Geneva police. The sergeant testified the appellant did not seem reluctant to talk about his escapades, but no threats or promises were made to him; that he talked of his own free will; that the sergeant asked him where he got these guns, and he said that they had brought them from Baltimore with them, and that as to the particular revolver to which his attention was directed, the appellant said that it was his and that he had used it in Baltimore.

The sergeant further said that the rest of the conversation involved the information that the boys had held up some Belle Isle cabs in the City of Baltimore before they came to Niagara Falls, and they even gave the streets where they abandoned the taxicabs. That he was not able to remember the streets, but did remember some reference being made to a ball park. On

this testimony the Court admitted the gun in evidence, and this is the subject of the first exception.

It seems to require little authority to hold that where a traverser has admitted that a certain gun found in the car with him was his, and that he had used it in Baltimore, and that in Baltimore he and his companion had held up some Belle Isle cabs, then the gun is admissible in evidence against him on his trial for holding up the Belle Isle cabs in Baltimore. The objection is made that the revolver was not identified by any of the victims, nor was there any mark of identification given as to the gun. Several cases from ,other jurisdictions were cited by the appellant in which it was held that the admission in evidence of guns, knives and automobile tires, found in the possession of the several defendants in these cases when they were arrested, was prejudicial error. The point in each of these cases, however, was that there was no evidence whatever to connect the articles so found with the charges upon which the respective traversers were being tried. In the case before us there is definite testimony of an admission that this particular gun was used in Baltimore, where the traverser also admitted he had held up some Belle Isle cabs. The weight to be given to this testimony, if any, was a matter for the Court sitting as a jury, but we think the gun was properly admitted in evidence.

The second and third exceptions relate to the admission of evidence of an alleged confession made by the appellant in February, 1941, at detective headquarters in Baltimore. The appellant was examined prior to the admission and his testimony was that he came to headquarters with Lieutenant Vogelsang, and the latter said to him, "Stanley, whatever you say to me will be used against you in court." The appellant asked him if it was necessary for him to make a statement and Lieutenant Vogelsang said, "No, but it will help you a lot," and that he understood by that it meant

freedom. Lieutenant Vogelsang was then asked whether he ever told the appellant if it would help him a lot if he made a statement, and he said, "No." On that conflict of testimony the Court permitted Lieutenant Vogelsang to repeat his conversation with the appellant and this ruling constitutes exception number 2. When the witness started to tell what had happened, he said that after the appellant and his sister and brother and two other men had talked at headquarters, and the visitors had left, he asked the appellant if he wanted to give him a statement; that he warned him about his constitutional rights; that no promises or threats were made; that the appellant said, "I will tell you everything." At that point another objection was made and to the ruling permitting the witness to proceed, the third exception was taken.

There is no doubt that in this State the determination of whether or not a confession shall be admitted in evidence is a preliminary matter for the Court to decide. *Markley v. State,* 173 Md. 309, 196 A. 95. The burden of proof is upon the State to show that a confession is freely and voluntarily made, and is not obtained by any improper inducements. *Robinson v. State,* 138 Md. 137, 113 A. 641; *Hammond v. State,* 174 Md. 347, 198 A. 704; *Wright v. State,* 177 Md. 230, 9 A. 2d 253.

In this case it is the appellant's word against the word of one officer, although the latter is later corroborated by Detective Tarr, who was present. If the appellant's statement were uncontradicted, we believe that the confession should not have been admitted.

In the early case of *Briscoe v. State,* 67 Md. 6, 8 A. 571, a prisoner charged with murder was told by the committing magistrate "that it would be better for him to tell the truth, and have no more trouble about it." Thereupon the prisoner confessed. This Court said: "Here, then, was an inducement, and one, too, of the strongest kind, held out to him. The witness, it is true, says he told the prisoner he could make no promises. But what does this

amount to when, in the next breath, we find him saying to the prisoner that it would be better for him to tell the truth, and thereby have no more trouble about the matter." In the case of *Watts v. State*, 99 Md. 30, 57 A. 542, 544, a reporter told a prisoner in jail that he need not say anything unless he desired but "it would be possibly better for him if he would make a clean statement, so it would not appear erroneously in the papers; that the papers would get it anyway, and, as my paper was an evening paper, the correct statement would come out first." The Court held that a confession thus obtained should not have been admitted.

The confession in this case, if obtained as stated by the appellant, comes within the rule laid down in the Biscoe and Watts cases above mentioned, but notwithstanding that, we are unable to say that the Court erred in admitting it on the conflicting testimony. On the one hand we have the officer who got the confession stating emphatically that it was freely and voluntarily made; that no promises were made, and that he did not make the remark attributed to him. He is corroborated in this by a second officer, who said he heard nothing of the kind. Against this we have only the testimony of the appellant. If courts adopt the rule that whenever an accused seeks to repudiate his confession, all he has to do is to state it was obtained from him by improper promises, no confession would ever be admitted. In the cases cited there was no contradiction whatever of what was said; but in the case before us now we have the officers saying one thing, and the accused the other. The trial Court was clearly within his rights in holding that the preliminary testimony was sufficient to admit the confession. This whole matter was quite fully discussed in the case of *McCleary v. State*, 122 Md. 394, 89 A. 1100, and this Court speaking through Judge Stockbridge, said: "It is the fundamental duty of the Court in all cases to pass upon the admissibility of evidence. A confession alone consti-

tutes no crime; it is only evidence tending to show that a crime has been committed, and it may or may not be believed by the jury, or by the Court sitting as a jury, in any particular case; but the admissibility of it as evidence to be submitted to the jury is distinctly, under the system of law prevailing with us, a question for the Court." The Court in that case admitted the confession and said that its conclusion was "that the evidence produced on behalf of the defense is not sufficiently clear as to the involuntary character of that confession to exclude the admission of it, but rather is to be considered as affecting the weight to be accorded to it." On motion for reargument in the same case, the Court restated its position in these words: "There was no intent to depart from the well-recognized rule that, where the confession of the commission of a crime is sought to be offered in evidence, the burden is upon the State to show that the confession so offered was the voluntary act of the accused, but, in the view of this Court, that burden had been met. The rule does not, of course, mean that such evidence shall be absolutely uncontradicted. In most cases where an alleged confession is offered, there is some contradiction as to the circumstances under which it was made, and it then becomes necessary for the trial Court to weigh the evidence, as was done in *Nicholson v. State,* 38 Md. 140, 141, and admit or reject the confession according as the Court shall conclude that the State has met the burden of establishing the voluntary character of the confession. That was what was done in this case. But beyond and in addition to this, while the evidence given as to the circumstances under which the confession was made is to be considered in determining its admissibility, it is also to be considered in determining the weight to be given to the facts embodied in it; that is, the substance of the confession itself."

The Court, which passed on the admissibility of the evidence in this case, while sitting as a Court,

also had to pass on its weight while sitting as a jury, and it must be presumed that he considered the latter in reaching his verdict. Both while sitting as a Court, and while sitting as a jury, he had the opportunity of observing the witnesses, and hearing the testimony, and we are unwilling to disturb his conclusion that the State had sustained the necessary burden of proof and that the confession should be admitted. Each case has to be considered upon its own facts and circumstances. While the rights of the accused should be carefully protected, we cannot adopt the view that the trial Court erred in admitting a confession merely because the accused claimed that certain words were spoken to him, and that claim is entirely unsupported by any other evidence, and is flatly denied by the officer. The decision of such a question, when it arises, must be left largely to the discretion of the trial Court. We find no error in the ruling of the Court before us on the second and third exceptions.

These constitute all the exceptions to the rulings of the Court which were taken during the trial. The appellant, however, raises two other questions to which he took no exceptions and concerning which he made no motions: One of these is to the method of his identification at the city jail. His contention in brief is that when Bernard Freeze went there to see if he could pick him out of a line-up, he knew before he went in that the suspected man was named Lubinski; that when the appellant got to the line-up, one of the officers called him by name, and told him to get on the end, and that he was on the end, and that the other men in the line-up were not of the same general size and appearance, so that he was, in effect, pointed out to Freeze for identification. This, of course, is not admitted by the State, but, on the contrary, is contradicted. Even were the question properly before us, we would hold that the entire evidence as to this identification should be admitted, so that the Court, sitting as a jury,

could determine whether the appellant had been properly identified, or not, in view of all the testimony.

The other question relates to certain remarks of the Court during the course of the trial. The Court was trying this case as a jury, and his remarks could prejudice the appellant with no one but the Court himself. It is a novel idea that a Court by making remarks to himself may thereby improperly influence his own mind. It would seem reasonable to suppose that if these remarks had any result at all, they were beneficial to the appellant. He thereby got an insight into the mind of the Court, and might be better able to stress the particular points of his defense, which might appeal to the Court. However, there are no exceptions to any of these remarks, nor was there any motion made as the result of them, and we do not think they are properly before us for review.

It is true that in the case of *Lee v. State*, 163 Md. 56, 161 A. 284, this Court, speaking through Chief Judge Bond, indicated that certain rulings of the trial Court in a criminal case could be brought up in other ways except by bills of exceptions. In that particular case the questions for review were rulings on challenges to the array of petit jurors. There is nothing in that case which would lead to the conclusion that rulings on objections to the evidence could be brought up in other ways than by bills of exceptions.

In the case of *Cohen v. State*, 179 Md. 696, 16 A. 2d 878, 879, where it was urged that there was a reversible error in a remark of a trial Court before a jury and exception was taken, but no motion made to strike the remark out, or to warn the jury against giving it any effect, or to declare a mistrial, this Court said: "* * * the only remedy lay in one of those motions. Correction by one of them must be attempted to enable this Court to set aside a judgment because of an improper remark." The Court indicated, however, that it was not passing on available methods of correcting any interference

by a Court that might amount to a denial of due process of law.

We find nothing in the rulings on the evidence of identification, or in the remarks of the trial Court, which would justify us in concluding that there has been any denial of due process of law, or any infringement on the constitutional rights of the appellant. There has been no error in the rulings of the trial Court and the judgment and sentences will be affirmed.

*Judgment affirmed with costs.*